## THE TORONTO.

(Circuit Court of Appeals, Second Circuit. December 7, 1909.)

### No. 65.

**1. SHIPPING (§ 132*)—DELAY—STAY AT INTERMEDIATE PORT—NEGLIGENCE.**

Where a steamer's call at an intermediate port during seven voyages made the previous year had averaged 5⅝/₇ days, a stay on a subsequent voyage extending to 11 days, including 2 Sundays, a holiday, and 1½ days of rain, was not negligence per se.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 132.*]

**2. SHIPPING (§ 117*)—DELIVERY—BILL OF LADING.**

Where a bill of lading for the shipment of onions called for delivery at New York, a tender of delivery at Hoboken, in the port of New York, was insufficient.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 429; Dec. Dig. § 117.*]

**3. SHIPPING (§ 141*)—BILLS OF LADING—EXEMPTIONS—NEGLIGENCE.**

Exemptions in bills of lading are not construed to cover the negligence or default of the carrier, unless it is expressly stipulated for.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 497; Dec. Dig. § 141.*]

**4. SHIPPING (§ 141*)—BILLS OF LADING—DELIVERY—EXEMPTIONS—STRIKES.**

Where a bill of lading exempted a carrier from delay occasioned by strikes or stoppage of labor "from whatever cause," and on the arrival of the ship delivery was delayed by a general longshoreman's strike, which prevented prompt delivery, which had been in progress for a month before arrival, and continued after she was discharged, with which strike the carrier had nothing to do, it was entitled to the benefit of the exemption.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 497; Dec. Dig. § 141.*]

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel of William N. White and another against the steamship Toronto and Thomas Wilson's Sons & Co., Limited, claimants or owners, to determine damages for the deterioration of a shipment of onions, due to the delay in delivery. Judgment for respondent, and libelants appeal. Affirmed.

For opinion below, see 168 Fed. 386.

Charles Caldwell, for appellants.

Wing, Putnam & Burlingham (Charles C. Burlingham and Jonathan H. Holmes, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The onions were delivered in a damaged condition, and we shall assume that this was due to delay in delivery, as the libel alleges. The bill of lading is an execrable document, owing to the multitude of exceptions it contains, many of them unreasonable and under our law invalid, the small type in which it is printed, the length of the lines, and the lack of any paragraphing to help the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

eye.  Still it is the contract of carriage and to be enforced, whether the libelants read it or not, except as to provisions contrary to public policy or our law.  It is dated Hull, May 11, 1907, and receipts for 4,000 bags of onions in apparent good order and condition, to be delivered in like good order at the port of Boston, the consignee to have the option of delivery in New York on giving notice before the steamer's arrival at Boston.  It contains the following provisions:

"* * * But nothing in this bill of lading (whether written or printed) is to be read as an engagement that the said carriage shall be performed directly or without delays; the ship is to be at liberty either before or after proceeding towards the port of delivery of the said goods, to proceed to or to return to and stay at any ports or places whatsoever (although in a contrary direction to or out of or beyond the route to the said port of delivery) once or oftener in any order, backwards or forwards, for loading or discharging cargo, passengers, coals, or stores, or for any purpose whatsoever, whether in relation to her homeward voyage, or to her outward voyage, or to an intermediate voyage and all such ports, places and sailings shall be deemed included within the intended voyage of the said goods."

"* * * Restraints of princes, rulers and people, vermin, jettison, barratry, riots, strikes, tumults, lockouts, stoppage of labor from whatever cause, and consequent delays and loss or damage by force or otherwise. * * *"

The libelants availed themselves of the option in the bill of lading and ordered the onions to be delivered in New York, where a general strike of longshoremen then prevailed.  The steamer arrived at Boston May 25th, and after loading 550 tons and discharging 867 tons of cargo sailed thence for New York June 5th.  It is claimed that the steamer should not have stayed at Boston more than three days.  The proof shows that in 1906 she made seven voyages to Boston, her average stay being five and five-sevenths days, practically six days.  We cannot say that a stay of eleven days per se shows negligence.  They included two Sundays, one holiday and a day and a half of rain, four and a half days in all on which no work was done.  Whether six and a half days were too long for rigging cargo gear and discharging and loading 1,417 tons of cargo depends upon the number of holds into which cargo was loaded or from which it was discharged and in what order the holds had to be worked.  Although the steamer had eight hatches, work was done only at Nos. 2, 3, 4, and 7, and not on the same days at those.  In the face of the positive testimony that there was no unusual delay and the finding of the District Judge, we cannot say that there was, merely because less time was taken on other voyages as to which we have no particulars.  It was certainly to the ship's interest to get away as soon as possible, unless earlier arrival at New York would have given no greater dispatch because of the labor troubles there, which we shall presently consider.

The steamer on arrival at New York June 6th, not being able to get to her own pier, went, as she had a right to do under the bill of lading, to Hoboken, where by June 11th, she discharged all her cargo except the onions, which the libelants insisted must be delivered not only in the borough of Manhattan, but between Piers 48 and 52, North River, claimed by them to be the market for Egyptian onions.  The claimant contends that delivery at Hoboken would be a delivery at the port of New York and a performance of the bill of lading, which,

however, called, not for the port of New York, but for New York. The question is not important, because the claimant did deliver eventually at Pier 50, New York, in accordance with the libelants' requirement. The last question, therefore, is whether the delivery ought not to have been made there sooner.

The claimant relies upon the exception of strikes or stoppage of labor "from whatever cause." The libelants say that these last words are broad enough to include the claimant's own negligence, and, therefore the whole exception is void under the Harter act. Even if this were so, the words apply only to stoppage of labor, leaving strikes as an independent category. But on familiar principles exemptions contained in bills of lading are never construed to cover the negligence or default of the carrier unless that is expressly stipulated for. We do not think the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) has any application at all.

There is no doubt that there was throughout the port of New York a general strike of longshoremen for higher wages, which lasted from about May 6th to June 17th, that it caused a great congestion of transatlantic freight, and prevented the claimant from delivery in ordinary course after the Toronto arrived there. It is true that by conceding what the strikers demanded the claimant could have had all the labor it needed and could have delivered the onions much sooner. But this can be said of every strike, and so the exception be made valueless. While it would no doubt not cover a strike or stoppage of labor caused by or promoted by the carrier, we do not think we have a right to apply or refuse to apply it accordingly as we find the demand of the strikers reasonable or unreasonable. We feel bound to give it effect. There was a strike and stoppage of labor, ultimately unsuccessful, which did prevent prompt delivery, and the claimant is entitled to the benefit of the exception.

The decree is affirmed.