DESROCHERS v. UNITED STATES.

No. 289.

Circuit Court of Appeals, Second Circuit.

July 10, 1939.

Gregory F. Noonan, U. S. Atty., of New York City (Horace M. Gray and Charles E. Wythe, both of New York City, of counsel), for the United States.

Treacy & Gough, of New York City (Edgar J. Treacy, of New York City, of counsel), for libellant-appellee and cross-appellant.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant signed ship's articles at Philadelphia as a carpenter on respondent's steamship "Independence Hall". He suffered injuries from a fall on shipboard, for which he now seeks to recover damages. He had previously lost one eye and at the time of the accident wore a glass one on his left side. The trial judge found that the master and mate had been in close proximity to him and that the fact that he wore a glass eye was readily discernible.

On March 23, 1938, the libellant was instructed by the mate to put new gaskets on the manhole covers on the cofferdam located at the after end of the deep tank in No. 3 hatch. The deep tank was divided into two compartments by a bulkhead running fore and aft and having a passage way three feet two inches wide along the top of it at the level of the tween deck. The deep tanks could be reached by a steel ladder leading from the after end of the shelter deck to the tween deck and there were other steel ladders leading from the tween deck to the bottom of each compartment of the deep tank. There was also a wooden ladder that ran from the shelter deck to the tween deck and rested on the bulkhead separating the two deep tanks. It was placed at an angle of about 45° and had been where it was at the time of the accident for four weeks or more and had been steadily used by the ship's company. When the mate gave libellant instructions to make repairs in the deep tank he took

him down from the shelter deck to the tween deck by the steel ladder. The libellant did his work in the left deep tank during the morning. In the afternoon he proceeded to make the repairs in the right deep tank. In doing his work in the tanks he had to come up to the shelter deck more than once to get tools and appliances and in returning he descended from the shelter deck to the bulkhead several times on the wooden ladder. On his last trip upon reaching the foot of the ladder, which he had come down, with his face toward it, he stepped off the edge of the left deep tank (which was unlighted) instead of upon the bulkhead, fell into the deep tank and suffered the injuries for which he has brought suit. He claims that he fell because the ladder did not rest upon the middle of the bulkhead and because there was no safety rope along its left side. There was a safety rope rigged through stanchions on the right side. The district court held that the respondent was negligent in not maintaining a proper guard around the side of the left deep tank but also found the libellant negligent in stepping off into the left deep tank. The court found that the total damage was $20,000, to which negligence the libellant contributed 40%, and allowed a net recovery of $12,000. It also found that the absence of a safety rope on the left side of the bulkhead rendered the vessel unseaworthy.

The respondent contends (1) that the vessel was not unseaworthy and that libellant was barred from recovery under the Jones Act, 46 U.S.C.A. § 688, for negligence not constituting unseaworthiness, (2) that respondent was not negligent in failing to maintain a hand line along both sides of the bulkhead, (3) that there was no causal connection between the injuries which the libellant received and the alleged unseaworthiness of the vessel or the negligence of the respondent, and (4) that in using the wooden ladder the libellant assumed the risk.

Whether or not the ship was unseaworthy is unimportant for we are not disposed to disturb the finding of the trial court that the failure to install a safety rope on the left side was negligent and contributed to the injury since the presence of such a rope would have warned the seaman of his proximity to the deep tank so that he would not have fallen into it. The testimony was offered that safety ropes are ordinarily employed on ships to prevent seamen from falling into open hatches and, therefore, a foundation was laid for requiring the standard of care which the trial judge found essential if liability was to be avoided under the Jones Act, 46 U.S.C.A. § 688.

The defense of assumption of risk cannot be sustained. Since the recent decision of the Supreme Court in Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 it seems plain that this defense cannot be invoked to limit the rights of recovery of seamen in situations like the present and that their rights must be determined under the rules of comparative negligence. Here the ladder had been in its position for some weeks, was more convenient than the vertical steel ladder for workmen who had to carry tools, and there was no proof that libellant used it in disobedience of any order.

The final point raised to defeat recovery is that the libellant sought damages under the maritime law because of unseaworthiness of the vessel due to absence of a guard rail along the edge of the left deep tank. It is said that libellant having elected to pursue a cause of action under the maritime law based on unseaworthiness cannot recover under the Jones Act for negligence. But, in our opinion, his cause of action was based on negligence and was founded on the Jones Act. This is clear from the allegations in subdivision 8 of the libel. A cause of action under the Jones Act is based on negligence and when brought against the government has to be prosecuted in admiralty because of the requirement of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. Johnson v. U. S. Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L. Ed. 451; Sevin v. Inland Waterways Corporation, 5 Cir., 88 F.2d 988. But this requirement does not turn the suit into a proceeding under the old rules of the maritime law where the right to indemnity depended on proof of unseaworthiness. We see no reason for injecting into this suit the perplexing and often-times unsatisfactory if not indefensible theories that surround discussions of the election of remedies. The somewhat obscure language of subdivision 10 of the libel does not change the cause of action set forth in subdivision 8.

We believe that the trial court was correct in finding that the libellant was negligent in stepping off the ladder on the wrong side and perceive no reason for

changing the apportionment of fault and we hold that the decree was right and should be affirmed.