**BURKHOLDER v. UNITED STATES et al.**

No. 71.

District Court, E. D. Pennsylvania.

June 9, 1944.

Dorfman & Levitan, of Philadelphia, Pa., for libellant.

Gerald A. Gleeson, U. S. Atty., J. Barton Rettew, Jr., Asst. U. S. Atty., and Rawle & Henderson, all of Philadelphia, Pa., for the United States and War Shipping Administration.

KIRKPATRICK, District Judge.

The libellant, a member of the crew of the S. S. William C. Atwater, was injured, while the ship was docked at Havana, by the breaking of a ladder which he was descending to the dock. He filed a libel in personam against the United States, the War Shipping Administration (the charterer of the vessel), and the Fall River Navigation Company (the owner), charging negligence in failing to provide a safe place to work, failing to provide competent co-employees and superior officers, failing to inspect appliances and in failing to maintain the vessel and appliances in a seaworthy condition.

The government respondents have filed exceptions and exceptive allegations, setting forth the charter in extenso.

I am of the opinion that the exceptions must be sustained.

 I agree with the libellant that the mere fact that the charter calls itself a time charter and provides specifically that it is not to be construed as a demise of the vessel, does not conclusively determine its character. Nor are provisions in the charter purporting to limit the liability of either party for tort claims or to apportion such liability effective against an injured third party, if the character of the relationship or the laws of the United States impose liability in some other way. But this is plainly a time charter and nothing else. The provisions specifically pointed out by the libellant do not change its character or take it out of the general rule that the charterer under a time charter is not liable to third persons for the torts of the owner or his agents.

The clause, "The Master (although appointed by the Owner) shall be under the orders and directions of the Charterer as regards employment, agency, and prosecution of the voyages;" or one similar to it, was passed upon by the Circuit Court of Appeals for the Second Circuit in Worrall v. Davis Coal Co., 122 F. 436, and held not to make the charterer liable to such claims. See also Wehner v. Dene Steam Shipping Co., 1905, 2 K.B. 92 in which a charter party containing the clause was held not to amount to a demise of the ship.

 Clause 23, which provides that, in the event that continued employment of the master or any member of the crew appears to be prejudicial to the interests of the United States in the prosecution of the war or if the United States is dissatisfied with their conduct the owner shall make changes necessary in the appointments, does not make the master the charterer's man. On the contrary the clause plainly recognizes the owner's right to hire and discharge. The charterer itself cannot discharge objectionable personnel. It has only a contract right against the owner in this regard. Nor has the charterer any right to select a new master or a member of the crew to take the place of one so discharged. The provision obviously has to do with potential disloyalty or treason in a vital war service and has no reference to the skill, capacity or experience of the ship's complement, as seamen.

 Clause 19, providing that the owner shall not be responsible for damage resulting from various causes mentioned unless due to its actual fault or privity, does not even purport to be an assumption by the charterer of liability for third party damage claims. It has to do with claims by the charterer against the owner for failure to perform, the subject matter being "any loss or damage or delay or failure in performing hereunder." That is, the charterer may not hold the owner responsible for loss to it arising from negligence of the master, mariners, etc., in carrying out the charter obligations, unless the owner is directly involved.

The libellant contends that the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., gives him the right to maintain this action against the United States and the Shipping Administration solely by virtue of the latter's possession of the vessel and ownership of the cargo and without regard to the character of the contract under which the vessel was operated or whose employees were responsible for the injury.

 Certainly the Suits in Admiralty Act does not change the rule that the charterer under a time charter is not liable for the negligence of the owner's employees. That Act does not create new liabilities. It has to do entirely with remedies and, just as it did not extinguish substantive rights against private operators (Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471), so it did not impose liabilities where none existed before even though the government was a party. The new remedy by libel in personam against the United States which it gives lies only "in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action." "Maintained" implies that there must be a cause of action existing independently of the Act.

Could this suit have been maintained against the vessel if it had been privately owned or operated?

The suit is plainly under the Jones Act, 46 U.S.C.A. § 688, in admiralty. The libel is captioned: "Action in Admiralty for Personal Injuries to Seamen under Suits

in Admiralty Act of 1920 (41 Stat. 525) Applying Provisions of Sec. 33 of the Merchant Marine Act of 1920 without Prepayment of Costs under 40 Stat. 683."

Each of the eight specifications of fault on the part of the respondents is a subdivision of one general charge that "Disregarding their duty on the premises, the respondents, by their agents, servants and employees, were careless and negligent in:" etc.

"The Court will presume that a seaman's action alleging negligence is brought under the Jones Act, although the Act is not pleaded." Benedict on Admiralty, Sec. 25, Vol. 1. In The M. E. Farr, D. C., 38 F. Supp. 8, 9, the Court construing a somewhat similar libel held that "since it asserts that the injuries were sustained by reason of the 'negligence and carelessness of the respondent'" the libel was one under the Jones Act. See also Desrochers v. United States, 2 Cir., 105 F.2d 919.

Under the Jones Act no suit in rem is available to a seaman who elects to avail himself of its provisions. The M. E. Farr, supra; Plamals v. Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827; The Birkenhead, D. C., 51 F.2d 116.

It has been said by the Courts so often as hardly to require citation of authority that the Suits in Admiralty Act merely substituted a remedy in personam against the United States for an existing remedy in rem, the sole purpose of the Act being to prevent interference with the operation of government owned or controlled vessels. See Blamberg Brothers v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346. Consequently, where there is no remedy in rem available to the libellant, the Act has no application.

Were this suit based upon the general law of maritime tort, the libellant would have a right in rem against the ship if his cause of action was the unseaworthiness of the vessel. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. I do not question that, in such case his right of action would be transferred to the United States by the Suits in Admiralty Act, but as has been shown, his cause of action is entirely different, arising not under the general law but created by a statute and consequently limited by the statute.

The exceptions are sustained and the libel is dismissed as to the War Shipping Administration and the United States.