## SAWYER v. UNITED STATES.

District Court, S. D. New York.
Feb. 15, 1946.

Simone N. Gazan, of New York City, for libelant.

John F. X. McGohey, U. S. Atty., of New York City (Gay & Behrens and Edward J. Behrens, all of New York City, of counsel), for respondent.

KENNEDY, District Judge.

Libelant is a seaman who claims damages because of injuries sustained as a result of the negligent orders of the chief officer of the steamer Samuel F. Miller, a merchant vessel operated for the respondent United States of America. The claim of negligence is based on the fact that on March 11, 1944, while the Samuel F. Miller was at sea during heavy weather, libelant was needlessly ordered to the forepeak locker to remove an iron cover in the storeroom. As a result of the rolling and pitching of the ship he says he was thrown against the stanchion of a gun platform, and also the starboard towing bitts.

The libel does not disclose whether or not libelant is a resident of the Southern District of New York, and, naturally, it is silent on the question of the libelant's place of business. There is no article alleging that at the time of the filing of the libel the ship was within the territorial waters of the United States.

The answer sets up a special plea to the jurisdiction.

After opening the case counsel for the libelant requested that I rule on the jurisdictional point before proceeding with the trial. Counsel for the respondent addressed no motion to the libel. Strictly, therefore, there is nothing upon which a decision can operate unless it is the duty of the Court sua sponte to decide the point. During the discussion of the question, counsel for the libelant admitted that his client is not a resident of this district, and that the Samuel F. Miller was not in the Port of New York when the libel was filed.

As I understand it, I cannot decide this matter unless I take a position on all three of the following questions:

1. Did Congress intend by the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752, to permit the filing of a libel in personam, where such suit could have been brought under general maritime law, or did it merely create a proceeding which was in personam in form only as a substitute only for the proceeding in rem against Government-owned vessels which existed formerly by virtue of the Shipping Act of 1916. Act of September 7, 1916, 39 Stat. 728 et seq., 46 U.S.C.A. § 801 et seq.

2. When the statute talks about the district in which a suit in Admiralty may be brought against the Government (46 U.S.C.A. § 742; "the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found") was it setting up a limitation on jurisdiction over the subject matter, or was it merely defining venue?

3. If the statutory language concerning the proper district for the commencement of suit is not jurisdictional, does a respondent waive the point by pleading to the merits, when the libel itself is silent on libelant's residence or place of business, and on the location of the vessel involved?

It would serve no useful purpose to consider each one of these questions separately, because in the cases which have dealt with this problem all three considerations are interwoven. The better approach is to consider such precedents as I have been able to find, and to arrange them for discussion in chronological order.

In The Isonomia, 2 Cir., 1922, 285 F. 516, the libelant was a British corporation. The libel claimed a lien for wharfage, but there was no allegation that the vessel was in the Southern District at the time of the filing of the libel. The statutory language concerning the district of suit was construed as a venue provision, and it was held

that even though libelant had a place of business in the Port of New York, it could not lay the venue of the suit in the Southern District of New York since it was seeking a remedy in rem and the ship was not in that district. The case was criticized and practically repudiated in Nahmeh v. United States, 1925, 267 U.S. 122, 125, 45 S.Ct. 277, 69 L.Ed. 536, not so much because the sentence in the statute dealing with the district in which suit could be brought was not a venue provision, but because the language of the Suits in Admiralty Act had been construed too strictly.

In Blamberg Brothers v. United States, 1923, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346, a Maryland corporation filed a libel claiming damages because of the deterioration of cargo. The barge which was responsible for the damage was, at the time of the filing of the libel, in Havana, Cuba. Concluding that there was no liability in personam, and that therefore the proceeding must be one in rem, the Court said that so long as the ship was in a foreign port the proceeding could not be maintained. While the Court hints that it was somehow important that Government owned merchant vessels in foreign ports are not immune from seizure, I understand the holding in the case to be that the Suits in Admiralty Act is not broad enough to permit enforcement of a right purely and solely in rem by a libel in form in personam, unless the suit be brought in the district where the ship is found.

Judge Goddard said in Cross v. United States, D.C.S.D.N.Y., 1923, 8 F.2d 86, that it was possible to file a salvage libel in personam in the Southern District of New York in the absence of the ship. In the Cross case libelant was a resident of the Southern District of New York, and the exceptions were overruled. The Cross case is a clear holding that a suitor having a right purely in personam may maintain suit in the district of his residence under the Suits in Admiralty Act.

Nahmeh v. United States, 1925, 267 U.S. 122, 45 S.Ct. 277, 278, 69 L.Ed. 536, was a suit by a seaman for personal injuries. It was filed in the Eastern District of New York. At the time of the filing of the libel the ship was in the Southern District of New York. The libelant was a resident of the Eastern District of New York. The Supreme Court opinion does not make it clear whether Nahmeh's libel was filed as a substitute for a libel in rem only. But the Court assumed this, and said that even in what would be a suit in rem between private parties, a libel could be properly filed under the Suits in Admiralty Act in the district where libelant resided. It made no difference where the vessel was, said the Court, "provided only, that it was within the jurisdiction of the United States."

In Eastern Transportation Co. v. United States, 1927, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, the libel was in personam. The claim arose as the result of a collision between libelant's barge and the wreck of a Government ship called the Snug Harbor. The district of suit was the Eastern District of Virginia, and the statutory basis of liability was of course the Wreck Act of March 3, 1899, 33 U.S.C.A. § 409. The principal question agitated in that case was again whether the Suits in Admiralty Act offered a substitute only for proceedings strictly in rem, or whether, on the other hand, Congress intended that the expression "proceeding in Admiralty" was broad enough to cover both libels in personam and libels in rem. The Supreme Court reversed the judgment of the District Court dismissing the libel for want of jurisdiction. It held that the Court does have jurisdiction over the subject matter of proceedings in personam against the Government by virtue of the Suits in Admiralty Act. There is little question that in the Snug Harbor there was no real "venue" question; the statutory provisions regarding the district of suit seem to have been treated as jurisdictional, both by the District Court and the Supreme Court.

Kunglig Jarnvagsstyrelsen v. United States, 2 Cir., 1927, 19 F.2d 761, involved a cargo libel brought in the Southern District by a Swiss corporation with no office in the United States. At the time of the commencement of the libel the offending vessel was in the Eastern District of Virginia. The majority of the court held that the provisions in the statute relating

to the district of suit are not jurisdictional, but relate merely to venue. The Circuit Court reversed a District Court decree and overruled the exceptions to the libel. Circuit Judge Learned Hand dissented, being of the opinion that the allegation that the ship is in the waters of the United States when the libel is filed is a jurisdictional averment and, therefore, the libel was properly dismissed.

In Carroll v. United States, 2 Cir., 1943, 133 F.2d 690, 692, the libelant, a non-resident, filed his libel against the United States and the Waterman S. S. Agency Ltd. He had been injured while at sea because of the negligence of the ship's cook in putting a coffee pot on the deck of the galley during a storm. As a result of this, libelant was scalded. Although the ship at the time of the filing of the libel was at Jersey City, and therefore within the territorial waters of the United States at the time of the trial, there was no showing that she was within the waters of the United States when the libel was filed. The holding in the case was that the only possible liability against the Government was in rem, and therefore it was entitled to a dismissal of the libel, the ship not being in the district of suit. The opinion hints that it is an open question whether the ship's presence in the territorial waters of the United States when the libel is filed is not also a requirement in the case of liability purely in personam.

Sportiello v. United States, D.C.E.D. N.Y., 1944, 55 F.Supp. 551, was a suit arising out of the death of a longshoreman. Presumably, the libelant was a resident of the Eastern District of New York, where the libel was filed. Judge Galston was of the opinion that, since jurisdiction in personam existed, the absence of the ship from United States territorial waters when the libel was filed did not require dismissal of the libel. He did, however, render a decree in favor of the respondent.

In McGhee v. United States, D.C., 62 F.Supp. 224, 1945, A.M.C. 714, Judge Bright, dealing with a case where the libelant was a non-resident, held that the statutory provisions concerning the district of suit were merely venue provisions, waived by a general appearance. He relied heavily upon Eastern Transportation Co. v. United States, supra. Finally, Judge Knox, in Abbott v. United States, D.C., 61 F.Supp. 989, 1945, A.M.C. 728, a suit where the libelant was obviously a non-resident and was suing for personal injuries, dismissed the libel, where the ship was not shown to be within the territorial waters of the United States when it was filed. Judge Knox was of the opinion that under the statute this is a jurisdictional requirement. He held that in any event the venue was wrong, and since the libel did not disclose that libelant was a non-resident, the point was not waived by a plea to the merits (citing Roberts v. Lewis, 144 U.S. 653, 12 S.Ct. 781, 36 L.Ed. 579).

I do not attempt to reconcile these cases. I regard them as irreconcilable. I turn back to the questions which I said I think I have here for decision, and the first question is whether Congress intended, by the Suits in Admiralty Act, to permit the filing of a libel in personam where such a suit could be brought under general maritime law, or whether the statute merely created a proceeding which was in form in personam, but was a substitute only for a proceeding in rem. On this point I timidly suggest that the intention of Congress in enacting the Suits in Admiralty Act was to permit the suitor under the form of a libel in personam to maintain a libel basically either in personam or in rem. If this is *not* so, since the Jones Act, 46 U.S.C.A. § 688, creates no maritime lien, a suitor under that statute may not invoke the Suits in Admiralty Act, even where the other jurisdictional requirements are met.[1]

It is strongly intimated in the Blamberg case, the Nahmeh case, and the Carroll case that independently of any language in the statute concerning the place of suit, juris-

---

[1] If the "proceeding in admiralty" permitted by the Suits in Admiralty Act is, except for form, a suit in rem only, then logic requires that Jones Act suits will not lie. This is certainly the holding in Burkholder v. United States, D.C.E.D.

Pa., 1944, 56 F.Supp. 106, seemingly accepted in Ryan v. United States, D.C.E. D.Pa., 1944, 57 F.Supp. 586, and at least tentatively followed in Pineiro v. United States, D.C.N.D.Cal.S.D., 1945, 62 F. Supp. 95.

diction under the Suits in Admiralty Act is conditioned on the presence of the ship in the territorial waters of the United States when suit is commenced. I think it is clear that this view is based upon the idea that no one has a right to invoke the statute unless he had a right of arrest against the ship of which he was deprived by the first section of the act. If this reasoning be adopted, it follows that no suit is possible where the ship is outside the territorial jurisdiction of the United States, since she would not be subject to seizure. In other words, if my analysis is correct, these cases mean that Congress waived immunity against suit only in situations where the suitor had a right in rem in the first instance. This reasoning has always puzzled me because I cannot find any express words in the statute to support it, and, if Congress meant what the cases say it did, then it is certainly curious that suit was permitted in the district of the libelant's residence. The section of the act permitting suit against the United States, 46 U.S.C.A. § 742, is surely broad enough to mean that a seaman with rights under the Jones Act for example, is given the same rights against the government. But the construction I have mentioned deprives them of these rights. These people, notably in time of war, would be under a grave disadvantage if the statute must be read in the way I have suggested.

As I shall mention in another connection, I am aware of my duty to construe the act strictly. Even so, I cannot think that when it waived immunity against suit the Congress was thinking merely in terms of maritime liens. I think it intended, as the statute plainly says, to let down the bars in all cases where the suitor could have maintained a proceeding in admiralty if only private merchant vessels were involved. Eastern Transportation Co. v. United States, supra, is not to be explained on any other basis. And, dealing with an analogous statute, the Public Vessels Act, 46 U.S.C.A. § 781 et seq., the Supreme Court seems to have rejected the idea that the Congress meant to waive immunity only where the vessel itself was responsible. The Cava-

lier, (Canadian Aviator v. U. S.) 1945, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901. My only excuse for my present contribution to the spate of decision in this matter lies in the fact that it affects by far the most numerous class of suitors in the admiralty courts. There is hardly a District Judge who has not been confronted with this problem. And the diversity of decision is the strongest kind of evidence that the statute needs to be clarified, perhaps by revision.

I know that under the construction which I believe proper the libelant in cases of this kind gets something and gives nothing in return. And of course it is perfectly plain that the question of protection against seizure was uppermost in the minds of Congress when the statute was enacted. But surely it did not have to proceed in such a round about way to prevent seizures. It could have stopped them without substituting another remedy; and there is nothing in the language of the statute that suggests to me, at least, that immunity from seizure and waiver of immunity from suit are strictly reciprocal. I conclude that even though libelant had no maritime lien against the ship on which he was hurt he has a right to maintain this suit. If this conclusion is right it makes no difference where the ship was when the libel was filed unless libelant is depending upon her presence in some district so that he can maintain suit in that place.

The libel, however, in this case is completely silent, not only concerning the location of the Samuel F. Miller but also on the point of libelant's residence or place of business when suit was commenced.[2] Libelant's advocate says that the statutory requirements as to the place of suit are "venue" provisions merely and, since respondent has answered to the merits, the point has been waived. Certainly, Judge Bright's decision in the McGhee case supports libelant's argument. There the libelant alleged that the ship was in the district of suit, or would in the future come into that district. The United States denied this, but since it owned the ship it obviously knew where she was. There-

---

[2] As a matter of fact, it was admitted on the argument that the libelant resides in North Carolina, and the Samuel F. Miller is now in the port of Norfolk.

fore, the argument proceeds, and Judge Bright held, that by pleading to the merits and proceeding to trial, the government had waived the "venue" point like any other suitor. Just as certainly libelant's argument under this head is completely demolished by the holding of Judge Knox in the Abbott case, and also by the decision in the Carroll case. In the Abbott case, the libel was originally silent on the residence of the libelant or the location of the ship. But later it was amended, and libelant affirmatively pleaded that he was a resident of the district of suit. At the trial, it developed that he was not, and Judge Knox held that there was a failure of proof on a vital issue and, therefore, there must be a dismissal of the libel. He said there could be no waiver, since the libel, as originally filed, contained no reference to the place of libelant's residence and, therefore, under Roberts v. Lewis, 1892, 144 U.S. 653, 12 S.Ct. 781, 36 L.Ed. 579, the point had not been waived. What was said in the Abbott case concerning waiver of a "venue" requirement (assuming it to be that) applies in all strictness here, because for all that the pleadings here disclosed, the respondent had no information prior to the trial how the claim of "venue" in the Southern District of New York would be upheld, and the answer contains a general plea to the jurisdiction of the court.

But I am not at all satisfied that the provisions for the place of trial contained in the Suits in Admiralty Act ought to be interpreted as mere "venue" provisions. Certainly there are strong arguments against this conclusion. As originally drafted, section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742, contained, not three, but five provisions about the place of suit. Congressional Record Vol. 59, Part Two, Pages 1678, 1679, January 17, 1920. In addition to those now found in the statute, there were proposed provisions for suit in the district in or nearest that in which the cause of action arose, and in any district in which the Attorney General or other duly authorized law officer might agree to appear. These two provisions were stricken from the statute as it was finally enacted. It surely is legitimate to conclude from this that Congress did not favor the bringing of suit in any district that the libelant might select regardless of the statute, and was unwilling to make it possible for government law officers, either by express assent or by inaction or inadvertence, to permit the suit to proceed in the district of libelant's choice.

■ And, on general principle, when the government relinquishes immunity from suit, as it has done under the Suits in Admiralty Act, failure of a suitor to comply literally with the statutory conditions is fatal. Schillinger v. United States, 1894, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108. I know perfectly well that statutory conditions permitting suit against the government have in other instances been construed liberally by the Supreme Court. For example, where the Tucker Act is concerned, and referring particularly to the provisions for the place of suit, Mr. Justice Hughes says (United States v. Hvoslef, 1915, 237 U.S. 1, 12, 35 S.Ct. 459, 462, 59 L.Ed. 813, Ann.Cas.1916A, 286): "But assuming that the subject-matter was within the jurisdiction of the court, the requirement as to the particular district within which the suit should be brought was but a modal and formal one, which could be waived, and must be deemed to be waived in the absence of specific objection upon this ground before pleading to the merits."

And, in Choremi v. United States, D.C. Mass.1928, 28 F.2d 913, overruling a demurrer on the point of jurisdiction, the court cites the case of Thames & Mersey Ins. Co. v. United States, 1915, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann.Cas.1915D, 1087, to support the conclusion that a demurrer to the jurisdiction (the power to decide) is, in itself, a plea to the merits, which waives the "venue" (the place of trial) question.

I know also that, dealing with the Suits in Admiralty Act and its companion statute the Public Vessels Act, the Supreme Court has been much more generous to suitors than the Circuit Courts of Appeals or the District Courts. (e. g. Nahmeh v. United States, supra, and The Cavelier, 1945, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed.

901). I can only say that Judge Frank, writing in Hammond-Knowlton v. United States, 2 Cir., 1941, 121 F.2d 192, 194, has outlined what I think must be my position more clearly than I could myself.

I conclude that a libel under the Suits in Admiralty Act, which contains no averment within the letter of the statute concerning the residence or place of business of the libelant, or the location of the offending vessel, is completely defective, that, if at the trial the libelant does not bring himself within the statutory language concerning the place of suit the court is without jurisdiction, that no government law officer has a right to waive the point and that the court is under a duty to raise it of its own accord.

Accordingly, the libel is dismissed for want of jurisdiction.