## SILK v. UNITED STATES WAR SHIPPING ADMINISTRATION.
### No. 145 of 1946.

United States District Court
E. D. Pennsylvania.
July 30, 1948.

580

Freedman, Landy & Lorry, of Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, of Philadelphia, Pa., for respondent.

KIRKPATRICK, District Judge.

The libellant was a seaman in the service of the S.S. Cacalilao, a vessel owned by and operated for the United States. He was injured when a defective rope which supported the scaffolding upon which he was working broke, and he fell sustaining the injuries for which this action, under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., for damages and maintenance and cure was brought.

### Jurisdiction and Venue.

The libel contains no averment as to the residence of the libellant or the present or future whereabouts of the Cacalilao. I find as facts:

The libellant is not a resident of the Eastern District of Pennsylvania.

The libellant's mother lived in Atlantic City, New Jersey, and for many years prior to the middle of 1944 the libellant had gone to sea in small vessels from that port. He then began to ship out on larger vessels and came to Philadelphia, the nearest large shipping center, to get such employment. Between voyages he returned to his home in Atlantic City, and his testimony clearly indicates that during that period he regarded Atlantic City as his home. He apparently stayed in Philadelphia for a night or two on occasion to suit his convenience. After his mother died, he did not in any sense take up residence in Philadelphia but when he returned to the United States after his injury he went to live with his sister in Cardiff, New Jersey, until he felt well enough to work again. He sought employment through an agency in Philadelphia and used the Seaman's Institute as a mailing address, that is, he testified that he would drop in occasionally when he had reason to be in the City and would generally find something for him there. At the time the libel was filed, he was working on a farm in New Jersey and, except for a period of five months when he worked on farms in the Philadelphia area, he has continuously lived and been employed in New Jersey since the accident, with the further possible exception of a few nights on which he occupied a room in the City.

The libellant does not have a principal place of business in this District.

The libellant says that he always "ships out" from Philadelphia either to sea or to work on a farm. It is true that he comes to Philadelphia to obtain employment but this is because the shipping companies have their places of business here and because there is a shipping commissioner here and none in Camden. I do not think that a casual worker, part-time seaman, part-time farm hand, has a "place of business" in a city to which he goes from time to time to find employment, or for that matter, anywhere else.

It is plain that the libellant has not brought himself within the provisions of the Suits in Admiralty Act concerning the place of suit. However, the questions remain, whether in this action the government's attorney can waive those provisions, and if he can, whether he has done so.

I find myself unable to agree with the view taken by the Court in Sawyer v. United States, D.C., 66 F.Supp. 271, 277, to the effect that "the court is without jurisdiction, that no government law officer has a right to waive the point and that the court is under a duty to raise it of its own accord."

The difficulty which I find in adopting this view arises from the indisputable fact that the Supreme Court in Eastern Transp. Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 290, 71 L.Ed. 472, accepted jurisdiction without the slightest question in a similar situation, solely upon the basis of a waiver by the government. In that case a Maryland corporation brought a suit under the Suits in Admiralty Act against the United States and another corporation as joint defendants in the Eastern District of Virginia. There was no allegation in the libel and no suggestion in the entire record (which I have examined) that the libellant had any place of business in the Eastern District of Virginia nor could there be any question of the vessel's being found within that district, since it was at the bottom of the sea off Montauk Point. The rea

ord shows, by the certificate of the District Judge, that "The United States appeared specially and filed a suggestion of want of jurisdiction. It raised no question of venue in the cause but waived the same, its contention being that it was not suable in any court on the cause of action set up in the libel and that the court had no jurisdiction regardless of the question of venue." The opinion of the Supreme Court, after stating the facts and the question before it—which was whether the Court had jurisdiction to entertain a libel in personam against the United States to recover for the loss of a vessel and cargo resulting from the failure of the United States to remove or mark the wreck of a vessel which while owned and used by it as a merchant vessel was sunk in a navigable channel—said "It further appears that all questions of mere venue are waived."

I do not see any escape from the conclusion that the Supreme Court regarded the provisions of the Suits in Admiralty Act as to the district in which suit could be brought as venue provisions which could be waived by the government's attorney at the trial. Had the Court considered them basically jurisdictional, the Court, as was said in the Sawyer case, supra, would have been under a duty to raise the point of its own accord and would certainly have done so.

■ In the present case, I think that the government has waived all question of venue. The point was raised for the first time by a motion to dismiss the libel for lack of jurisdiction made at the bar of the court after the libellant had been cross-examined extensively on the facts relating to his residence. Had the libel contained an averment that the libellant was a resident of the district, it might be argued that the respondent's failure to raise the point until his nonresidence had developed at the trial was not a waiver; but the libel on its face failed to bring the libellant within the provisions of the Act relating to the district in which suit must be brought, there being no averments as to his residence or place of business or the whereabouts of the ship. The United States appeared generally and filed an answer, in which the only allegation bearing on the point is "The

respondent, The United States of America, admits the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court solely in accordance with the provisions of the Suits in Admiralty Act and not otherwise." This sentence, whatever, if anything, it means, certainly cannot be construed as a plea to the venue. The other respondent, the War Shipping Administration, denied the jurisdiction of the Court in its answer but did not challenge the venue. So far as I know it has never been questioned that appearing generally, filing responsive pleadings and going to trial without specifically raising any objection to the venue constitute a waiver.

My conclusions of law upon the question of jurisdiction are:

(1) The provisions of the Suits in Admiralty Act relating to the place where suit may be brought are not jurisdictional.

(2) These provisions may be waived.

(3) In the present case they have been waived.

### The Merits.

I find the facts as follows:

On September 5, 1945, while the Cacalilao was in port at Aruba, West Indies, the libellant was ordered to do some painting around the skylight which was 100 feet above the engine room floor. He worked from planks placed crosswise on beams about 90 feet above the floor, but there was one point which he could not reach from the beams. A scaffold was necessary and in order to rig one he went to the ship's stores to get rope. There were several piles of rope there and he selected two pieces long enough for his purpose, examining them carefully to see that they were sound. Not finding anything wrong with them, he rigged the scaffold and went to work on it. After he had worked a short time, one of the ropes broke, and the scaffold dropped a distance of about two and one-half feet onto the beam. The libellant landed astraddle of the beam and saved himself from falling to the engine room floor but received an injury to his elbow.

■ I find that the libellant had no knowledge that the rope which broke was

defective and was not negligent in choosing it.

The decision of the Supreme Court in Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, rules this case. In the opinion in that case the Court said in 321 U.S. at page 103, 64 S.Ct. at page 459, 88 L.Ed. 561, "The staging from which petitioner fell was an appliance appurtenant to the ship. It was unseaworthy in the sense that it was inadequate for the purpose for which it was ordinarily used, because of the defective rope with which it was rigged. Its inadequacy rendered it unseaworthy * * *. Had it been adequate, petitioner would not have been injured and his injury was the proximate and immediate consequence of the unseaworthiness."

The fact in this case that it was the libellant himself and not a ship's officer who selected the rope used is of no importance. The whole point of the Mahnich case is that the fact that a human agency contributes to the furnishing of a defective appliance on shipboard does not affect the shipowner's liability for injury caused thereby. That liability arises solely from the unseaworthiness of the appliance. If the negligence of a ship's officer does not bar the plaintiff's right to recover, neither does his own unwitting, or even negligent, act, though in the latter case, the damages might have to be reduced proportionally. Of course, if this libellant had deliberately selected a rope which he knew to be defective when he knew he could have used a sound one, the question of proximate cause might arise, but that is an entirely different question and does not have to be met here.

The statements of fact in the foregoing opinion may be taken as special findings. I also find as a fact that the scaffold on which the libellant was working when he was injured was an unseaworthy appliance.

My conclusions of law are:

(1) That the fact that the libellant himself selected the rope and rigged the scaffold is immaterial.

(2) That the libellant is entitled to recover damages.

I award the libellant maintenance and cure for the period of his disability which terminated January 17, 1946. I find that the libellant has suffered damages in the sum of $1,000 and, in addition to maintenance and cure, I award that sum.

Judgment may be entered in accordance with the foregoing.