Terrence J. **MARTIN**, Administrator,
Estate William Willett, dec'd.

**v.**

**UNITED STATES** of America.

Civ. A. No. 69–808.

United States District Court,
E. D. Pennsylvania.

Dec. 28, 1970.

Bert Ziebelman, Philadelphia, Pa., for plaintiff.

Edward C. Toole, Jr., Philadelphia, Pa., for defendant.

## OPINION

TROUTMAN, District Judge.

Questions of venue involving injured seamen are not new to the Courts.

However, counsel have cited no case and we have found none directly and specifically deciding the question of venue here involved concerning a suit instituted by the estate of a deceased seaman three thousand miles from the district having any contact with the decedent or his surviving widow who is the sole heir and beneficiary of his estate.

On February 7, 1968, William Willett, a seaman in the United States Merchant Marine and a member of the crew of the S.S. ELKO VICTORY, drowned while going ashore at Pier No. 7, South Harbor, Manila, Republic of the Philippines. He was, at the time, domiciled in and a resident of San Francisco, California. His surviving widow, Margaret Willett, who was his sole heir-at-law, was and is likewise domiciled in and a resident of San Francisco, California. Her deposition establishes that following the decedent's death she promptly obtained counsel in San Francisco, signed and submitted "some papers" to the United States District Court for the Northern District of California and thus received earnings that had accrued to the decedent at the time of his death. She also received certain insurance benefits and retained the household goods and furnishings which were owned jointly with the decedent. There were no other assets in the estate.

When efforts made by her California counsel to recover damages for the decedent's death met with no success and the necessity for litigation became evident her counsel wrote her "concerning the laws of the Commonwealth of Pennsylvania" and suggested the necessity for a "representative" in Pennsylvania to represent her in connection with "the money I'm supposed to receive from my husband's death". She signed certain papers and thereafter one Terrence J. Martin, a citizen and resident of the Commonwealth of Pennsylvania, was appointed administrator of the estate of William Willett, deceased. On April 11, 1969, he instituted this suit in the United States District Court for the Eastern District of Pennsylvania.

The deposition of Mrs. Willett further establishes that she has never been in Pennsylvania, that the decedent was never in Pennsylvania, that neither she nor the decedent have had any contact with the Eastern District of Pennsylvania prior to the institution of this suit. She has never met, has never known and has never had any conversations with Terrence Martin, the administrator in this case.

Prior to the appointment of Mr. Martin as administrator and prior to the institution of suit she had no contact with counsel who now represent her in the Eastern District of Pennsylvania. Contact was made through her California counsel. Through her "husband's friends" who, like her husband, were members of the National Maritime Union, and through her California counsel she has learned of the "type of work" done by counsel who here represent the estate in the Eastern District of Pennsylvania and that they are "specialists in this kind of action".

The deposition of Terrence Martin establishes that he was appointed administrator at the request of counsel who here represent the estate and by whom he was at that time employed. He confirms that there has never been any contact between him and either the decedent or the widow and sole heir. He pretends no particular expertise in the administration of estates.

It is admitted, for the purposes of this case, that the S.S. ELKO VICTORY upon which the decedent was employed at the time of his death has never been within the Eastern District of Pennsylvania. It is admitted that the only asset owned by the estate and to which Margaret Willett is the sole heir and beneficiary is the "personal injury action" here pending.

Suit has been filed under the Admiralty law as modified by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 and the Public Vessels Act, 46 U.S.C. §§ 781–790. Jurisdiction is conceded and, except for some confusion existing in

certain decisions, poses no problem and creates no issue. However, venue creates an issue by reason of the statutory provisions under which suit has been instituted and the filing, by the defendant, of a motion to dismiss, or in the alternative, to transfer this action to the Northern District of California because of improper venue.

■ Both the Suits in Admiralty Act and the Public Vessels Act contain specific provisions relating to venue. Both provide that suit shall be brought in the district in which the vessel or cargo charged with liability is "found". 46 U.S.C. § 742; 46 U.S.C. § 782. This provision is inapplicable in this case because of the absence of the vessel from the Eastern District of Pennsylvania. Additionally, both acts provide as follows:

"*Public Vessels Act*, 46 U.S.C. § 782. Venue of suit: * * * such suit shall be brought * * * in the District Court for the district in which the parties so suing, or any of them reside or have an office for the transaction of business in the United States; or in case none of such parties reside or have an office for the transaction of business in the United States * * then in any district court of the United States * * *.

"*Suits in Admiralty Act*, 46 U.S.C. § 742.

* * * * * *

Such suits shall be brought in the District * * * in which the parties so suing or any of them reside or have their principal place of business * *.

Sections 781 and 742, respectively, of said Acts create statutory waivers of sovereign immunity which the Government would otherwise enjoy. Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927). In creating such waivers Congress has seen fit to establish some limitations as to *where* the Government is subject to suit. In one instance, namely the Public Vessels Act (46 U.S.C. § 782), suit is permitted "in *any* district court" where neither party resides nor has an office for the transaction of business in the United States and where the vessel cannot be found in the United States. This would seem to clearly indicate a Congressional intent *not* to permit suit "in *any* district court" except in that one instance. In all other instances, suit is limited to the district in which the vessel or cargo is found (not here applicable) and the district in which the suing parties, "or any of them" reside or have a place of business.

"When the litigants are natural persons the conceptions underlying venue present relatively few problems in application". Neirbo Company v. Bethlehem Shipbuilding Corporation, Ltd., 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939). But where personal representatives, fiduciaries, guardians, administrators, corporations, etc., are involved problems exist. Courts have sometimes dealt rather harshly with a litigant who failed to observe the venue provisions in question.

In Abbott v. United States, D.C., 61 F.Supp. 989, at page 992, (1945), where the residence of the injured seaman in the district was not established, although he was hospitalized in the district for the injuries received on board ship, the Court stated:

" * * * the venue of the suit is wrong, and the libel must be dismissed for lack of jurisdiction * * ".

Likewise see Warren v. United States et al., D.C., 75 F.Supp. 210, at page 211 (1947) where the Court said as follows:

"It is at least clear that the objection to venue is well taken; and the libel against the United States must accordingly be dismissed * * * ".

While the Courts, in subsequent cases, have properly taken a more liberal view it is at least evident that Congress did not intend " * * * the bringing of suit *in any district* that the libelant (plaintiff) might select regardless of the statute * * * ". Sawyer v. United States, D.C., 66 F.Supp. 271, 276 (1946). Yet, this is, in effect, what the plaintiff here

contends. Plaintiff contends that where the injured seaman is deceased and intestate that an administrator may be appointed from *any* district and venue there established regardless of the residence of the deceased or the residence of his heirs.

It is true that in Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948) the Supreme Court noted that the United States is "ubiquitous throughout the land" (p. 302, 69 S. Ct. 70) and that the residence of the libelant may, therefore, be the "best measure of the convenience of the parties", (p. 302, 69 S.Ct. p. 73) but the fact is that Congress must also have recognized that the United States was "ubiquitous through the land" when it drafted the legislation and notwithstanding prescribed specific districts in which suit might properly be brought. In so doing it was, as the Supreme Court stated, "dealing with the *convenience* of the parties in *suing* or *being sued* at the designated places * * *" (p. 302, 69 S.Ct. p. 72). It must be noted that while venue deals with "convenience", it deals with the convenience of both parties, namely, the party "suing" and the party "being sued"; i.e., the United States. Thus, in Neirbo Company v. Bethlehem Shipbuilding Corporation, supra, the Court stated at 308 U.S. page 168, 60 S.Ct. page 154:

"* * * But the locality of a lawsuit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of the litigants and as such is subject to *their* disposition * * *"

*Again*, the Court speaks of the convenience of *both* litigants.

Considering the convenience of both litigants, it is difficult to find that venue properly rests in this district. The accident occurred in the Philippines and assuming that witnesses will be brought from there to the United States or that counsel must proceed to the Phil-

ippines for depositions, an additional six thousand miles (three thousand miles each way) is involved.[1] Moreover, the widow, whose interests are paramount, must proceed a like distance for purposes of trial. The "convenience of the litigants" does not seem to place venue in this district even if that were the sole test and even if the statutory language did not seem to so clearly spell out a contrary Congressional intent.

Balanced against "convenience" is the obvious desire on the part of the widow to utilize the legal talents and expertise available to her in this district about which she has heard and been advised both by friends of her deceased husband and members of the union to which he belonged. That her legal representation in this district has earned and enjoys a nationwide reputation for its ability, its expertise and the high quality of its work goes unquestioned. That its clients have benefitted immeasurably must be admitted. That the widow should seek such representation across the continent is to her credit. That such eminent counsel should make their services available at such distances and at considerable inconvenience is to their credit. But, the fact remains that had Congress intended to extend such right and privilege to the survivors of a deceased seaman, it could and would have said so. It could and would have authorized the institution of suit in *any* district, as it did in one instance not applicable here, and thus have afforded the plaintiff a nationwide choice of counsel. Thus, while we have absolutely no desire to deprive the estate or its beneficiaries and heirs of the free choice of counsel, we cannot allow such choice to defeat a clear Congressional and legislative intent.

In Silk v. United States War Shipping Administration, D.C., 79 F.Supp. 579, (1948) the plaintiff had far more contact with this district (in which he instituted suit) than exists in the instant

---

case. He "shipped out" of this district and obtained his sea-going employment in this district. He, for these and other reasons, visited Philadelphia frequently, living only as far away as New Jersey. By coincidence he was represented by the same law firm as represents the plaintiff in the present case. We might well suspect that he too sought the services of able and specialized counsel not available to him in the district in which he resided. Convenience-wise, that case probably involved less than one hundred miles. Notwithstanding, the Court held that plaintiff "had not brought himself within the provisions of the Suits in Admiralty Act concerning the *place of suit*". (p. 580).

Suits involving injured minor seamen represented by a guardian have, on several occasions, come before the courts on the question of venue and in each instance it has been held that it is the residence of the minor which is determinative of proper venue and not the residence of the guardian. Horzepa et al. v. Dauski, D.C., 40 F.Supp. 476 (1941); Untersinger v. United States, D.C., 74 F.Supp. 155; 2 Cir., 172 F.2d 298; D. C., 87 F.Supp. 532; 2 Cir., 181 F.2d 953; Paschal v. North Atlantic and Gulf S. S. Co. Inc., D.C., 95 F.Supp. 293 (1950).

While the Court in the *Horzepa* case appears to have grounded its conclusion on the finding that the injured minor was the "real party in interest", other courts have reached the same conclusion, without specific reference to the "real party in interest". When Congress grounded venue upon the residence of the "suing" party it must have had in mind the party or parties ultimately benefitting from the suit and not a technical "party" to the suit selected and chosen for collateral reasons, whatever they may be, in districts having no other connection with the litigation. In any event, the venue decisions involving injured minor seamen support our conclusion in the instant case.

Moreover, if we chose to apply the "real party in interest" theory, we face the fact that in Jaffe v. Philadelphia & Western R. Co., 3 Cir., 180 F.2d 1010, an "administratrix" was held to be the "real party in interest" where, as here, the lawsuit was the only asset. However, in McSparran v. Weist, 3 Cir., 402 F.2d 867, 876, *Jaffe* was overruled. Thus, any proper application of the "real party in interest" theory lends no support to plaintiff's case.

Plaintiff contends that there are distinctions between a guardian for a minor and an administrator of an estate in that the latter actually takes title to portions of the estate and the former does not. But, these distinctions were discussed at length in McSparran v. Weist, *supra*, and found to be without a difference (p. 875).

Plaintiff further contends that defendants' motion constitutes a "collateral attack" upon the decree of the probate court. This theory, followed in Mecom v. Fitzsimmons, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, was heavily relied upon in *Jaffe*, now overruled in *McSparran* and held in *McSparran* to be insufficient to save an administrator appointed to create or manufacture diversity.

While there are distinctions and differences between administrators and guardians and distinctions and differences between "jurisdiction" and "venue", it is evident that they have something in common. This led the *McSparran* court to a discussion of cases involving both guardians and administrators and led to the same result as to both. We cannot find sufficient differences between a minor guardianship and a deceased's estate to reach the conclusion urged by the plaintiff. An injured minor acting through his guardian should have choices of venue at least equal to those of an estate acting through an administrator and we do not believe that Congress intended otherwise.

Citing McSparran v. Weist, *supra*, and Groh v. Brooks, 3 Cir., 421 F.2d 589, defendant urges, loosely stated, that just as those cases dealt with "manufac-

tured" jurisdiction so here we deal with "manufactured" venue. To the contrary, plaintiff contends that the appointment of Terrence Martin as administrator was to obtain counsel in this district, that jurisdiction is already vested in this Court and that McSparran and Groh have no application to questions of venue. As already indicated, "jurisdiction" and "venue" do have something in common. Additionally, one of the motives back of "manufactured" diversity to obtain Federal "jurisdiction" may in many instances have been the same as the motive back of the appointment in the instant case, namely, representation by counsel unusually skilled in Federal personal injury litigation. Here again, *McSparran* and *Groh* appear to have something in common with the instant case and forced to do so, we might well conclude that this case involves "manufactured" venue of a sort. But we are not forced to do so and need only find what has been admitted to conclude that venue is improperly placed in this district. Venue, like jurisdiction, is determined by statute. Statutory and legislative intent cannot be defeated by individual and personal motives not falling within the statutory limitations. It is not the sovereign's consent to be sued which is in issue here, but its consent to defend in this district. From the beginning the defendant has vigorously objected to venue in this district and, unlike similar cases found in the reports, no waiver exists.

■ We thus face defendants' motion to dismiss or in the alternative to transfer. We will not dismiss for the reason that jurisdiction properly rests in the Federal Courts. Falciani v. United States, D.C., 87 F.Supp. 482 (1949). Therefore, transfer is inevitable but for the fact, once again, that this case has something in common with McSparran v. Weist, supra. Dealing, as we are, with a case of first impression, we must, in the language of the *McSparran* court, recognize that it is "our construction of the statute which determines" whether venue exists or not and that we may not follow "the unrealistic theory that the law has always been what the latest case for the first time declares it to be" (402 F.2d p. 877). In so doing we go beyond the considerations afforded the plaintiff by the *McSparran* court because here no previous ruling has been reversed or overruled. True, a transfer would not, on the surface, appear to impose an undue hardship upon the plaintiff estate. On the other hand, it may impose hardships of which we are unaware.

Therefore, we shall enter an order transferring this suit to the Northern District of California, but shall stay the effect of said order for a period of thirty(30) days to afford counsel an opportunity, if they so desire, to file with the Court a petition, motion or other appropriate pleading relating to resulting hardship, if any, and to show cause why this opinion should, as to this case, receive prospective application only.