## N. S. BYONNES & SON DAMPSKIBSREDERI AKTIESELSKAB v. UNITED STATES.

(District Court, S. D. New York.   October 22, 1923.)

1. **United States ⬤⟞125—Suit held not maintainable under Suits in Admiralty Act; "Operated by or for the United States."**

   A ship chartered by the United States, and subchartered by it to another, is not, while under the subcharter, being "operated by or for the United States," within the meaning of Suits in Admiralty Act, § 1 (Comp. St. Ann. Supp. 1923, § 1251¼), and the owner cannot maintain a suit in personam against the United States, under section 2 of the act (Comp. St. Ann. Supp. 1923, § 1251¼a), for her injury by the subcharterer.

2. **United States ⬤⟞125—Remedy given by Suits in Admiralty Act not available to owner of vessel.**

   The remedy given by Suits in Admiralty Act, § 2 (Comp. St. Ann. Supp. 1923, § 1251¼a), by suit in personam against the United States, runs only for those who may be regarded as either treating with the ship or suffering from her faults, and is not available to her owner.

3. **United States ⬤⟞125—Consent cannot give jurisdiction of suit not within the terms of Suits in Admiralty Act.**

   Suits in Admiralty Act, § 2 (Comp. St. Ann. Supp. 1923, § 1251¼a), gives jurisdiction to the District Court only of suits in cases which are within the scope of section 1, and where such jurisdiction is lacking it cannot be conferred by consent.

In Admiralty.   Suit by N. S. Byonnes & Son Dampskibsrederi Aktieselskab against the United States.   On exceptions to libel.   Exceptions sustained, and libel dismissed for lack of jurisdiction.

Sur exceptions to a libel in personam in the admiralty. The libel alleged that the libelants were owners of the Steamship Talabot, which they chartered to the United States for a term of 12 months on March 12, 1918; that thereafter, and on March 21, 1918, the United States subchartered the Talabot to Antony Gibbs & Sons, a British firm, for a voyage, from Cristobal to Valparaiso in ballast, and in return with a cargo of nitrates to a Gulf or Atlantic port of the United States. While in the harbor of Savannah, an unsafe port to which she was ordered, by the subcharterers, she took the ground, and was injured. This being a breach of the charter party between the parties hereto, they sue in personam on that instrument. The respondent excepts, because this court has no jurisdiction under section 2 of the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, § 1251¼a).

Charles E. Wythe, of New York City, for the exceptions.

Herbert K. Stockton, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above).   [1] The first question is whether the Talabot, which was not owned by the United States or any of its agents, and was not being "operated by" it or any of them, was operated "for" it, under section 1 of the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, § 1251¼).   I think not.   How can a charterer be said to be operating a ship for the owner?   It is the charterer's venture, not his.   The charterer may lay her up, if he will, and the hire goes on as though he worked her.   The profits from her operation are his profits, and the losses his.   The owner is indifferent to her dispatch upon commercial ventures on the seas.   He has parted with all right to her

control, just to allow the charterer to use her for himself, to make out of her what he can. The owner looks for his return, not to what she earns, but to the charterer's responsibility for the hire. The same relation holds between charterer and subcharterer. The phrase in section 1, "operated for," was meant to cover the agency or operating agreements, which were very common just after the war, in which the Shipping Board stood to gain or lose by the ship's traffic.

[2] While the case is of first impression, it is clear that the act does not mean to cover any such situation as that at bar. Indeed, since Blamberg v. United States, 260 U. S. 452, 43 Sup. Ct. 179, 67 L. Ed. 346, it is very doubtful whether the Supreme Court understands that the act covers any case where the libelant is not suing on a maritime lien; that is, where he could not arrest the ship. But that point I do not urge; for the present it is settled otherwise in this circuit in the Isonomia (C. C. A.) 285 Fed. 516, and I must take it so. But the general purpose of the act is apparent, even if suits in personam lie; I mean such suits that between individuals must be in personam. It was a remedial act to those who should be injured by the dealings of ships owned or operated by or for the United States, third persons whom the sovereign immunity of the United States deprived of any remedy. These did not include owners, who had a contract on which they might sue in the Court of Claims or under the Tucker Act (24 Stat. 505). I need not be so absolute as to say that an alternative remedy would bar relief under this statute, but I should, I think, go far enough to hold that it runs only for those who may be regarded as either treating with the ship or suffering from her faults. Owners are not in either class.

[3] Second. The libelant says that the United States has waived the point by an appearance. U. S. v. Hvoslef, 237 U. S. 1, 35 Sup. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286; Thames & Mersey Ins. Co. v. U. S., 237 U. S. 19, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087. But those cases turned on venue, and this is a question of substantive jurisdiction. Section 2 refers to section 1, and gives jurisdiction to this court only in the cases there mentioned. If the vessel be not operated for the United States, nobody's consent can confer jurisdiction on me to try the cause.

Exception sustained, and libel dismissed for lack of jurisdiction of the District Court.