## KUNGLIG JARNVAGSSTYRELSEN v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
May 9, 1927.

No. 281.

1. **Admiralty ⟋27—Suits in Admiralty Act was enacted to relieve government from obstruction of its commercial traffic by substituting remedy in personam for right in rem against vessel (Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼l]; Comp. St. § 8146e).**

Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l) was enacted to relieve the United States of obstruction of its commercial traffic by the seizure of merchant vessels owned by it or under its control, and was intended to substitute an equivalent remedy against the United States in personam for the right in rem against the vessel which Act Sept. 7, 1916, § 9 (Comp. St. § 8146e), had permitted.

2. **Admiralty ⟋44—Exceptions to libel against United States held plea to merits, constituting "general appearance."**

Where libel against United States under Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l) for loss of cargo alleged that District Court had jurisdiction, exceptions that libel fails to allege that cause of action is within court's admiralty jurisdiction when cause of action arose, and asserting that interrogatory attached to libel is immaterial, and not germane to cause of action, *held* not merely to raise question of jurisdiction of court as such, but constituted plea to the merits of the controversy, amounting to general appearance by defendant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Appearance.]

3. **Admiralty ⟋32—United States, by pleading to merits waived requirement that libel against it for cargo damages be brought in district in which vessel was found (Suits in Admiralty Act, § 2 [Comp. St. § 1251¼a]).**

Suits in Admiralty Act, § 2 (Comp. St. § 1251¼a), authorizing suits against United States on claims against its merchant vessels in District Court for district in which libelant resides or has principal place of business in United States, or in which vessel or cargo charged with liability is found, relates not only to jurisdiction of subject-matter of suit, but to jurisdiction over the person, and establishes privilege which United States may insist on or waive at its election, and which it did waive by pleading to merits.

4. **Admiralty ⟋32—Court had power to change venue to proper district on libel against United States for cargo damage (Suits in Admiralty Act, § 2 [Comp. St. § 1251¼a]).**

Where libel against United States for loss of cargo under Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l) was brought in wrong District Court, and government made general appearance, court had power under section 2 (§ 1251¼a) to change venue to proper district, on libelant's motion.

5. **Admiralty ⟋34—Two-year limitation for suing United States is matter of defense (Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼l]).**

Two-year limitation for suing United States under Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l) is a matter of defense, and not an affirmative part of libelant's cause of action.

6. **Admiralty ⟋34—Two-year limitation for suing government for damage to coal cargo did not begin to run until balance of cargo was sold (Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼l]).**

Where cargo of coal shipped on government-owned vessel was damaged by fire and subsequently discharged and sold, *held*, that two-year limitation did not begin to run against right to sue government under Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l) until sale of balance of coal cargo; measure of damage being unknown until that time.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Kunglig Jarnvagsstyrelsen, also known as the Royal Administration of the Swedish State Railways, against the United States, to recover for loss of cargo. From a decree sustaining exceptions to the libel and dismissing said libel, libelant appeals. Reversed, with directions.

See, also, 299 F. 991, 300 F. 891.

Gustav Lange, Jr., of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The appellant, a Swiss corporation, with no office, place of business, or agent in the United States, sought to maintain this libel, filed under the Suits in Admiralty Act approved March 9, 1920, to recover for loss of cargo. On May 8, 1920, at the port of Philadelphia, Pa., a shipment of coal was made on the steamship Alderman, and bills of lading were issued. Later the coal was sold to the appellant and the bills of lading transferred. The ship sailed for Malmo, Sweden, and on the 9th of May was obliged to turn back to Philadelphia because of an accident. It remained in the port of Philadelphia until December, 1921. The libel alleged that, because of negligence of the master and agents of the ship in stowing and caring for the coal, it became overheated and caught fire on July

20, 1920, and again on August 1, 1920; that eventually the vessel was discharged and the coal sold in Philadelphia for $2 a ton; that the libelant has received no part of the proceeds of this sale, and that the coal has become a total loss to it.

Exceptions were filed to this libel by the appellee because (a) it failed to allege that the libelant was a resident or had a principal place of business within the district; (b) or that the steamship was found within the district at the time the libel was filed; (c) that it failed to allege that the claimed cause of action set forth is within the admiralty jurisdiction of the court, and (d) it failed to allege when the claimed cause of action arose.

The District Judge sustained the exceptions, because the suit was not brought within the Eastern district of Virginia, where the ship was located at the time the libel was filed. He said that it should be definitely pleaded that the cause of action arose within the statutory period of limitation, and pointed out that, if it be established that the vessel was within the Eastern district of Virginia, the court may have jurisdiction to transfer the case to the proper district for trial.

An application was made to transfer the suit, and this was denied for want of power to grant such removal. The affidavit in support of the application for removal set forth that the libelant intended to move to amend the libel, showing that the steamship Alderman mentioned and described in the libel was at the time of the filing thereof in the state of Virginia.

Jurisdiction under section 2 of the Suits in Admiralty Act (Act March 9, 1920, c. 95, 41 Stat. 525 [Comp. St. § 1251¼a] provides:

"Such suits shall be brought in the district court of the United States for the district in which the party so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found."

This section was considered in Nahmeh v. United States, 267 U. S. 122, 45 S. Ct. 277, 69 L. Ed. 536, and the court held, in construing the section that Congress was evidently anxious to consult the convenience of intending libelants, and in taking away what was then protected by the law, namely, the rights of claimants to sue merchant vessels of the United States, as if they were private vessels, and as the United States is present everywhere in the United States, libelants

may name as the proper place for suit, either the place of residence of the parties suing, or of any one of them or their present place of business, or where the vessel or cargo charged with liability was found. In Eastern Transportation Co. v. United States (decided January 3, 1927) 47 S. Ct. 289, 71 L. Ed. ——, by the Supreme Court, a suit was brought by a Maryland corporation in the Eastern district of Virginia. The decision points out the great liberality of construction of the Suits in Admiralty Act (Comp. St. §§ 1251¼ to 1251¼l) in favor of libelants. It plainly exhibits an intent to subject merchant vessels of the United States to the responsibility of privately owned vessels. It points out that questions of venue may be waived.

The provisions of section 2, as to the district in which suits may be brought, refer to where the venue of the suits may be laid; also to which it may be removed under the following language: "Upon application of either party the cause may, in the discretion of the court, be transferred to any other District Court of the United States." It has been held that a libel in admiralty may be maintained against a corporation in any district by service there upon an attorney, appointed by the corporation, as required by the statutes of the state for service of legal process. In re Louisville Underwriters, 134 U. S. 488, 10 S. Ct. 587, 33 L. Ed. 991. The District Court has jurisdiction, unless dismissed for defects in venue.

[1] This act was passed for the purpose of relieving the United States from obstruction of its commercial traffic by the seizure of merchant vessels owned by it or under its control, and was intended to substitute an equivalent remedy against the United States in personam for the right in rem against the vessel which the Act of September 7, 1916, § 9, c. 451, 39 Stat. 728 (Comp. St. § 8146e), had permitted. Blamberg v. United States, 260 U. S. 452, 43 S. Ct. 179, 67 L. Ed. 346; Shewan & Sons v. United States, 266 U. S. 108, 45 S. Ct. 45, 69 L. Ed. 192.

[2] By the exceptions filed, not only is an attack made upon the venue of the suit, but the sufficiency of the libel. The tenth paragraph of the libel pleads that the District Court has jurisdiction in the premises.

Article 3 of the exceptions filed pleads that "the libel fails to allege that the claimed cause of action set forth is within the admiralty jurisdiction of this court," and article 4 that it fails to allege "when the claimed cause of action arose." Article 5 is an exception to the eleventh interrogatory attached to the

libel, because it calls for information which is "immaterial, in that it is not germane to the alleged cause of action." These exceptions do not raise merely the question of the jurisdiction of the court as such. There is a plea to the merits of the controversy. We have in name a special appearance, but in fact a general appearance. The jurisdiction of the District Court as such is accepted by the appellee to determine the sufficiency of the libel and, indeed, the controversy on the facts and law. Thames & Mersey Ins. Co. v. United States, 237 U. S. 19, 35 S. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087; Jones v. Andrews, 77 U. S. (10 Wall.) 327, 19 L. Ed. 935. By this pleading, a general appearance was made in the District Court, which, under article 10 of the libel, was claimed to have jurisdiction. And Congress by Suits in Admiralty Act, § 2, granted jurisdiction to the court in personam of the United States. It likewise provided for correction of a defect of venue by transfer to the proper district.

In United States v. N. Y. & O. S. S. Co. (C. C. A.) 216 F. 61, we pointed out the difference between jurisdiction of the subject-matter and of the venue of the suit, holding that the general intent of the act there under consideration—the Tucker Act (24 Stat. 505) —was to open the courts of the United States to suits against the government as respects the claims specified in that act, and that the intention was that they should be open to aliens as well as to citizens. We pointed out that the provision which requires the plaintiff to bring suit in the district in which he resides is applicable to a nonresident alien and to a citizen residing abroad, but that nevertheless the requirement is a personal privilege, which the law officers of the government may waive, and did waive by putting in a general appearance. See, also, St. Louis & San Francisco R. Co. v. McBride, 141 U. S. 127, 11 S. Ct. 982, 35 L. Ed. 659, and Panama v. Johnson (C. C. A.) 289 F. 964.

[3] In Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 S. Ct. 526, 42 L. Ed. 964, the provisions of an act as to the districts in which suits must be brought were held to have no application to a suit against an alien or a foreign corporation, but such a person or corporation may be sued by a citizen of a state in any district in which valid service can be made upon the defendant. The provisions of section 2 relate, not to the jurisdiction of the subject-matter of the suit, but to the jurisdiction over the person, and the provisions must be understood as establishing a privilege which the United States may insist on or may waive at its election, and it did waive it by its plea to the merits of the controversy.

[4] That part of section 2 which permits, in the discretion of the court and upon application of either party, a transfer from one district to any other district of the United States, depending upon the venue being laid pursuant to the foregoing provisions of section 2, was intended as a liberal provision granting power to the courts to make transfers. There is no limitation in the language as to the circumstances governing the transfer of the suit. The court for the Southern district of New York had jurisdiction by reason of the plea to the merits and therefore general appearance of the appellee. The case is in the wrong district, but the appellant timely moved for a change of venue to the Eastern district of Virginia. The court had the power under section 2 to grant the application. It was denied, not as a matter of discretion, but for want of power. The motion should have been granted.

[5, 6] But it is argued that, under the terms of the Suits in Admiralty Act, the libel must be filed within two years after the right to recover accrued. Any limitation as to the right to institute the suit was a matter of defense, and was not an affirmative part of the cause of action. Burnet v. Desmornes, 226 U. S. 145, 33 S. Ct. 63, 57 L. Ed. 159; Green Star S. S. Co. v. Nanyang (C. C. A.) 3 F. (2d) 369. The libel was filed on November 16, 1922. While the fire and damage to the coal occurred in July and August, 1920, two years had not expired after the sale of the balance of the coal before the libel was filed. The limitation period did not commence until the sale of the balance of the coal. The measure of damages was unknown until that time.

The decree is reversed, with directions to the District Court to overrule the exceptions.

L. HAND, Circuit Judge (dissenting). The libel did not allege that the ship was within the United States, a jurisdictional averment under Blamberg v. U. S., 260 U. S. 452, 43 S. Ct. 179, 67 L. Ed. 346, of which there could be no waiver by appearance or otherwise, since it went to the power of the court. The interlocutory decree of dismissal was therefore right. The libelant did not amend, but, following an intimation of the judge, moved to transfer the cause to the district where, as it then for the first time appeared, the ship lay, and where it should originally have brought suit. This raised the question whether a libel filed in the wrong district can be removed to the right one in the

court's discretion under the last sentence of section 2.

The second sentence prescribing the places where the suit must be brought is in terms absolute; I do not believe that the last sentence conditions it. That was inserted for quite another purpose, that is for convenience in the trial of the cause, or perhaps only to reach other parties, as suggested in Nahmeh v. U. S., 267 U. S. 122, 126, 45 S. Ct. 277, 69 L. Ed. 536. In any case it presupposes that the suit has been brought in the right court, or that the respondent consents to it where it is. If it also includes the correction of the libelant's mistake in choosing his forum, Nahmeh v. U. S., 267 U. S. 122, 45 S. Ct. 277, 69 L. Ed. 536, would scarcely have been put on the ground it was, since the libelant had there asked to transfer and been denied.

If I am wrong, this curious possibility exists: A mistaken libelant may remove to the right court to escape dismissal, and then move back for the convenience of trial or to reach other parties. I do not believe that such a seesaw was ever contemplated. Ordinarily there is no hardship in suffering dismissal and beginning again, and while unhappily there is in this case, it is entirely due to the libelant's delays. At any rate we may not twist the intent to escape a hard case.

I vote to affirm.