## BURKHOLDER v. UNITED STATES et al.

### No. 75 of 1944.

District Court, E. D. Pennsylvania.

Dec. 29, 1944.

On Reargument May 17, 1945.

Dorfman & Levitan, Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Jr., Asst. U. S. Atty., all of Philadelphia, Pa., for libellant.

Rawle & Henderson, of Philadelphia, Pa., for the United States et al.

Krusen, Evans & Shaw, of Philadelphia, Pa., amicus curiae.

KIRKPATRICK, District Judge.

This is the second libel filed by this libellant against the respondents. The first libel, filed October 13, 1943, alleged that the libellant was injured when a ladder, by which he was descending from the ship to the dock, fell, and that the accident was caused by the negligence of the respondents in that the ladder was not fastened or lashed in any way. That libel was dismissed upon exceptions (Burkholder v. United States of America, War Shipping Administration and Fall River Navigation Company, D.C., 56 F.Supp. 106), for the reason that it was clearly a suit under the Jones Act, 46 U.S.C.A. § 688, and that the respondents, being time charterers, were not suable under that Act for the negligence of the owner's employees.

The present libel was filed after the entry of the opinion in the first case but before final decree of dismissal. In the statement of the first cause of action the allegations are substantially the same as in the first libel except that, instead of pleading negligence, the libellant avers that his injuries were caused by the unseaworthiness of the ship in "that the said ladder was not fastened securely or lashed in any way to prevent it from falling, as such, constitutes an unsafe means of access to and from the said vessel." There is also a second cause of action for maintenance and cure and wages. The respondents have again filed exceptions, which must be sustained as to the first cause of action.

Section 33 of the Merchant Marine Act 1920 (Jones Act), 46 U.S.C.A. § 688, provides: "That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The Supreme Court in discussing the election referred to in this section in the case of Pacific Steamship Co. v. Peterson, 278 U.S. 130, 138, 49 S.Ct. 75, 77, 73 L.Ed. 220, said: "The right to recover compensatory damages under the new rule for injuries caused by negligence is, however, an alternative of the right to recover indemnity under the old rules on the ground that the injuries were occasioned by unseaworthiness; and it is between these two inconsistent remedies for an injury, both grounded on tort, that we think an election is to be made under the maritime law as modified by the statute." See also Plamals v. Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827; Kuhlman v. W. & A. Fletcher Co., 3 Cir., 20 F.2d 465; Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813; Skolar v. Lehigh Valley Railroad Company, 2 Cir., 60 F.2d 893. This libel is obviously based upon exactly the same facts as those upon which the libellant first elected to bring suit under the Jones Act against these respondents.

That election was final. The Court in the Pinar Del Rio case, supra [277 U.S. 151, 48 S.Ct. 458], said: "Seamen may invoke, at their election, the relief afforded by the old rules against the ship, or that provided by the new against the employer. But they may not have the benefit of both." Plainly that statement of the law is not susceptible of the interpretation that a seaman may bring an action under the Jones Act and, if it is decided against him, follow up with a second one under the general law of maritime tort. If he could do that he would unquestionably be having the benefit of both remedies. To so hold would amount to construing the "election" required by the statute as no more than a provision against double recovery for one injury, and there would be nothing to prevent his bringing the two actions at the same time and awaiting the result of the one first to come before the Court before proceeding to the final disposition of the other. Hence, the libellant may not now maintain this suit against the same respondents by merely rephrasing his libel to charge unseaworthiness in place of negligence.

There is also another reason for dismissing this libel. To recover indemnity for personal injuries under the general maritime law, independent of the statute, a seaman must show that either the ship or its appliances were unseaworthy. The defect may have existed at the commence-

ment of the voyage or it may have arisen subsequently, but a defect of some kind in ship or appliances must be proved. Whether the germ of the doctrine of unseaworthiness is to be found in some conception of owner's negligence, real or presumed, or in a breach of warranty of seaworthiness, or in a quasi-contractual obligation imposed by the relationship of the parties, in any case some breach of the duty or obligation is requisite in order to give rise to liability for injury. I know of no case based on the old rules of maritime tort, in which recovery has been allowed where the injury occurred on a ship, sound and perfect in all respects, with no fault directly attributable to the owner. In this case the injury arose from the negligent non-use of good equipment. If recovery were to be sustained there would be no reason why it would not be also allowed in a case of misuse or negligent use of sound equipment—exactly the situation in which recovery was denied in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

In the present libel, there is no allegation of defect in the ladder or suggestion that it had been made fast by a defective rope. The reason it fell was that someone had failed to make it secure by any kind of rope. That was a negligent omission on the part of the person whose duty it was, but it did not render the ship unseaworthy.

■ ˙ .The second cause of action, for maintenance and cure, is maintainable. This right is a contractual right independent of the seaman's right to recover indemnity under the general maritime law or indemnity under the Jones Act. Since he would have had a right in rem against the ship prior to the passage of the Jones Act for maintenance, cure and wages, this cause of action will be transferred by the Suits in Admiralty Act to the United States. See, Burkholder v. United States of America, War Shipping Administration and Fall River Navigation Company, D.C., 56 F.Supp. 106.

The exceptions are sustained as to the first cause of action and overruled as to the second cause of action.

### On Reargument.

This reargument was granted upon the Government's exception to the Court's holding that a seaman's remedy for maintenance and cure against a privately owned ship time chartered to the United States is converted by the Suits in Admiralty Act into a libel in personam against the Government.

The vessel, in common with most of the merchant ships of the United States, was requisitioned by the Government immediately after Pearl Harbor. Subsequently the owners executed a time charter to the War Shipping Administration, under which it was being operated at the time the cause of action arose.

■ The first and second sections of the Suits in Admiralty Act, 46 U.S.C.A. §§ 741, 742, are in pari materia (Blamberg Bros. v. United States, 260 U.S. 452, 458, 43 S.Ct. 179, 67 L.Ed. 346), and provide a consistent scheme of legislation by which in all cases in which Section 1 takes away an injured party's remedy by arrest or seizure of the vessel, a remedy by libel in personam against the United States is substituted. The vessels as to which the right to proceed in rem was abolished were (in addition to cases not here relevant) vessels owned by or operated by or for the United States.

■ The question now for decision is · whether this ship was operated "for the United States."

In Byonnes, etc., v. United States, D. C., 298 F. 123, Judge Learned Hand pointed out that a ship under charter is not operated for the owner nor a ship under subcharter for the charterer. He said: "How can a charterer be said to be operating a ship for the owner? It is the charterer's venture, not his. The charterer may lay her up, if he will, and the hire goes on as though he worked her. The profits from her operation are his profits, and the losses his. The owner is indifferent to her dispatch upon commercial ventures on the seas. He has parted with all right to her control, just to allow the charterer to use her for himself, to make out of her what he can. The owner looks for his return, not to what she earns, but to the charterer's responsibility for the hire. The same relation holds between charterer and subcharterer."

■ One would say that a time chartered ship ˙plying in commerce was necessarily being operated for some one and it would follow that if it is not being operated for the owner it must be for the charterer. However, the argument is now made that the word "for" in Section 1 of the Suits in Admiralty Act has a special meaning. Based on a dictum of Judge Hand in the Byonnes case and also upon what is stat-

ed to be the view adopted by the Shipping Administration and its practice for the last few years, it is contended that, in the words of Judge Hand " 'operated for' was meant to cover the agency or operating agreements, which were very common just after the war, in which the Shipping Board stood to gain or lose by the ship's traffic." As I understand these contracts however, the ships were generally owned by the United States or by the Emergency Fleet Corporation and would have been covered by "owned by" clauses of the first section of the act, without any necessity for the "operated for" clause. If the general purpose of the Suits in Admiralty Act be considered no reason is apparent to place ships time chartered by the United States outside its scope. The law was enacted "for the purpose of relieving the United States from obstruction of its commercial traffic by the seizure of merchant vessels owned by it or under its control * * *." Kunglig Jarnvagsstyrelsen v. United States, 2 Cir., 19 F.2d 761, 762. Vessels time chartered by the United States are instruments of the Government's commercial traffic and, in respect of obstruction of such traffic, no distinction can be drawn between the inconvenience arising from the seizure of such vessels and the seizure of those owned by the United States or operated for it under agency agreements. The fact that the charter may and usually does require the owner to provide by insurance or otherwise for the prompt release of the ship by the giving of a bond does not seem to be a convincing reason for reading into the statute a limitation in no way called for by its purpose.

The Court's decision is reaffirmed.