### DENAHEY v. ISBRANDTSEN CO., Inc., et al.
### No. 151-301.

United States District Court
S. D. New York.
April 23, 1948.

Lord, Day & Lord, of New York City (David M. Crawford, of New York City, of counsel), for respondent.

John F. X. McGohey, U. S. Atty., of New York City (Martin J. Norris, of New York City, of counsel), for respondent-impleaded.

LEIBELL, District Judge.

This is a motion by the respondent Isbrandtsen Company, Inc. to overrule the exceptions filed by the respondent-impleaded, United States of America, to the petition of the respondent seeking to implead the United States of America. The motion was argued April 9th.

The suit is one in Admiralty brought by Joseph J. Denahey, formerly Second Engineer aboard the S.S. "John J. Abel" a vessel of American registry, operated and controlled by the respondent Isbrandtsen Company. The libel charges that on February 9, 1947, while the vessel was docked at Kobe, Japan, the libellant, Denahey, went ashore pursuant to a pass and on official business. While ashore he was taken into custody by the United States Military Authorities and on February 28, 1947 he was released from custody, fully exonerated, and repatriated to San Francisco on a government ship. The libel further alleged:

"Eleventh: The complaint on which libelant was taken into custody came from the Master of the S.S. 'John J. Abel' and as far as libelant was concerned the complaint was absolutely groundless and it was the duty of the Master of the aforesaid ship to have libelant immediately released.

"Twelfth: The S.S. 'John J. Abel' continued on its voyage and when libelant was released from custody the ship had departed from Kobe and the Master in violation of

the shipping articles and without a hearing before the United States Consul unlawfully and without cause discharged libelant from said steamship and abandoned him without payment of his wages and without providing him with passage back to the United States.

"Fifteenth: By reason of said non-payment of wages and said unlawful and wrongful discharge, libelant is entitled to wages at the rate of $442.20 per month from February 9, 1947 to April 2, 1947, his expenses, overtime and subsistence and room allowance, all in the sum of $1,873.42, and damages for said unlawful discharge in the sum of $5,000.00. Libelant futher seeks pursuant to Section 596 of Title 46 of the United States Code, double wages for each and every day during which payment was delayed."

The respondent filed an answer to the libel and also filed a petition to implead the United States of America as a respondent-impleaded. The impleading petition alleges:

"Fourth: That on or about February 9, 1947 while the S.S. John J. Abel operated by the petitioner was docked at Kobe, Japan, the United States Military Authorities took into custody Joseph J. Denahay and while the S.S. John J. Abel lay at Kobe held him in their sole custody so that he was not able to carry on his duties as second engineer on board the S.S. John J. Abel and on February 15, 1947 the ship continued on its voyage sailing from Kobe, Japan for Vancouver, British Columbia thirteen days before all charges against libellant were withdrawn by the Army and libellant was released from the custody of the United States Military Authorities on February 28, 1947.

"Fifth: That at the time Joseph J. Denahey was released from custody of the United States Military Authorities on February 28, 1947 the United States Maritime Commission and the United States Army released the petitioner from all liability by virtue of the following letters and orders, original or copies of which will be produced at the trial: * * *"

The letters and orders referred to are (1) a letter from F. G. Lewis of the United States Maritime Commission at Kobe, Japan, addressed to Capt. R. E. Norris, the Commission's Regional Director at Yokahama, dated February 28, 1947, advising that Denahey had been released that day by the Military Authorities and had been directed to report immediately to Norris' office, departing from Kobe by train. The letter concluded "All charges have been withdrawn by the Army". (2) On March 3, 1947, V. L. Gal, the Senior Port Representative of the United States Maritime Commission at Yokohama, wrote the Commanding Officer of the 2nd Major Port at Yokahama requesting that transportation to the United States be arranged for Denahey and stated. "This seaman was removed from the SS John J. Abel at Kobe by Military authorities, but as the charge against him was dropped he should be repatriated at no cost to the individual or the operators of his vessel." (3) On March 5, 1947 Maj. W. G. Turnbull at the Headquarters Second Major Port issued a travel order for Denahey at government expense from Yokahama, Japan via the 4th Replacement Depot to the first mainland port of re-entry in the United States. The order stated that it was issued "pursuant to Public Law No. 580 under the authority of the Secretary of War, dated 20 October 1943 and as per T. C. Pamphlet No. 4, Marine Personnel Regulation, Reg. No. 10; Sec. 1, Par. 101.4". The concluding paragraph of the order quoted the paragraph of the letter of March 3, 1947.

The last sentence of the Fifth paragraph of the impleading petition states: "By reason whereof if there is any liability to the libellant any and all such liability should be borne by said United States of America and not by this petitioner, and the said United States of America should be proceeded against directly in this Court by the libellant."

The concluding prayer of the petition states: "Wherefore, Petitioner prays that a citation in due form of law may issue against the United States of America, citing it to appear and answer all and singular the matters in this petition and libel herein set forth and that the United States of America, respondent-impleaded, may be proceeded against as if originally made a

party herein, and if the Court should find that the libellant is entitled to a decree, then that said decree be entered against the respondent-impleaded herein, or if a decree should be entered against your Petitioner, that Petitioner have a decree over against said respondent-impleaded, and that Petitioner have such other and futher relief in the premises as to the Court may seem just."

The exceptions filed by the United States to the impleading-petition state: "The petition to implead the United States of America fails to allege a cause of action with respect to which the United States of America has consented to be sued by the Suits in Admiralty Act (46 U.S.C. Chap. 20 [46 U.S.C.A. § 741 et seq.]) or the Public Vessels Act (46 U.S.C. Chap. 22 [46 U.S.C.A. § 781 et seq.]) or any other statute or provision of law."

The Suits in Admiralty Act does not apply to any action taken by the Military Authorities in Japan in arresting Denahey. Neither the claim asserted by Denahey against the respondent Isbrandtsen Company, nor the claim over asserted by the Isbrandtsen Company against the United States, could be successfully asserted against the United States under the Suits in Admiralty Act. That Act is entitled "Suits In Admiralty By Or Against Vessels Or Cargoes Of United States", and the first two sections of that Act, §§ 741 and 742 of Title 46 U.S.C.A., show that the purpose of the Suits in Admiralty Act was to exempt from proceedings in rem merchant vessels owned, operated or controlled by or for the United States and cargo owned or possessed by the United States; but that "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained * * * a libel in personam may be brought against the United States". No merchant vessel or cargo of the United States is involved in this suit.

The Public Vessels Act, 46 U.S.C.A. Chap. 22, does not apply. The S.S. John J. Abel was not a "public vessel" of the United States. No public vessel of the United States caused either the libelant or the respondent any damage. A reading of § 781 of Title 46 U.S.C.A. shows that the Public Vessels Act was intended to cover claims "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States".

The so-called Tucker Act, 28 U.S.C.A. § 41(20)[1], does not apply. That Act confers upon the district courts of the United States original jurisdiction: "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all setoffs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court; * * *."

No contract with the United States, express or implied is involved in this litigation. If anything the alleged liability of the United States is based upon the tortious conduct of its Military Authorities at Kobe, Japan. Claims sounding in tort are expressly excepted from the Tucker Act.

Respondent contends that the letters above quoted constituted an "express contract" on which the petition is based. That is not so, as a reading of the letters will show. At best they contain an admission that Denahey was unlawfully arrested and detained, without any fault on the part of the owners or operators of the S.S. John J. Abel, and that Denahey was entitled to repatriation at the expense of the government. Nor is any implied contract involved, unless it be to repatriate the seaman, which was done at government.

---

[1] In 1948 Revision, 28 U.S.C.A. § 1346.

expense. There was no contract, express or implied, to pay his wages or to pay him damages.

Respondent claims that Public Law 580 of the 77th Congress, H.R. 4476, 50 U.S.C. A.Appendix, § 761 et seq., entitled "An Act Providing for sundry matters affecting the Military Establishment" covers the facts in this case and may properly be the basis of the claim by libellant or by respondent against the United States. There is nothing in that Act to support that contention. It contains provisions as to transportation of personnel and civilians, and as to other unrelated military matters, but it says nothing about paying wages or damages to any one unlawfully arrested and detained by the Military Authorities.

Respondent also refers to a letter of the Secretary of War, dated October 20, 1943, a copy of which is attached to respondent's brief. That letter, as its heading shows, relates to the "Delegation of authority to issue travel orders" and a travel order was issued to Denahey. That is its only application.

Finally respondent cites "T. C. Pamphlet No. 4 Marine Personnel Regulations, Registration 10, Section 1, paragraph 101.4" (which was also referred to in Major Turnbull's letter of March 5, 1947 above quoted). The designated paragraph, a copy of which is annexed to respondent's brief, refers to the repatriation of destitute and distressed seamen to a port of the United States, but has nothing to do with any claim of the seaman for wages or damages against the operator of the vessel to which he had been articled, or against the United States.

The Federal Tort Claims Act, 28 U.S.C. A. § 921 et seq. does not apply. It expressly excepts any claim arising out of "false imprisonment, false arrest, malicious prosecution" § 943(h)[2]; and also excepts "Any claim arising in a foreign country", § 943(k).[2]

In considering the petition to implead the United States this court has in mind the principle that the United States is entitled to sovereign immunity unless it has expressly consented to be sued. The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299. Statutes under which the United States consents to be sued must be strictly interpreted. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058.

Respondent's motion to overrule the exceptions filed by the United States to the impleading petition is denied. The exceptions are sustained, and the petition is dismissed.

---

[2] In 1948 Revision, 28 U.S.C.A. § 2680 (h. k).