### EPSTEIN v. UNITED STATES et al.

United States District Court
S. D. New York.
June 16, 1949.

Bailey & Muller, New York City (Donald H. Serrell, New York City, of counsel), for libellant.

John F. X. McGohey, United States Attorney, New York City (William H. Postner, New York City, of counsel), for respondents.

CLANCY, District Judge.

In October, 1942, the S. S. Farida, owned by citizens of Estonia and flying the Panamanian flag, was time chartered to the War Shipping Administration by one Kaiv acting as trustee for the owners. On January 24, 1942, the War Shipping Administration appointed respondent, J. H. Winchester & Company as its operating agent of the vessel. On January 1, 1944 the War Shipping Administration and United Fruit Company entered an agreement whereby the United Fruit Company became berth agent for the Farida contracting to conduct the

742

vessel's business for the United States. Exhibit F, Arts. 1 and 2. The reason for this second agreement was the ownership by United Fruit Company of facilities for mooring, loading and unloading vessels at Havana.

On or about the 24th of September, 1944, at New York, libellant delivered to the Farida, then being operated by the War Shipping Administration as a common carrier for transportation to Havana, two packages of goods. One of them, valued at $321.23, was never discharged from the vessel. At the time of its delivery to the Farida the United Fruit Company issued to the libellant a bill of lading executed "for the master by United Fruit Company as agent for the master." The name of the vessel appeared on the face of the bill of lading which also contained this clause 1 (a): "The Carrier shall be entitled to the full benefit of, and right to, all limitations of, or exemptions from, liability authorized by any provisions of Sections 4281 to 4286 of the Revised Statutes of the United States and amendments thereto [46 U.S.C.A. §§ 181–186] and of any other provisions of the laws of the United States or of any other country whose laws shall apply. If the ship is not owned by or chartered by demise to the War Shipping Administration or the Company designated herein (as may be the case notwithstanding anything that appears to the contrary) this bill of lading shall take effect only as a contract with the owner or demise charterer as the case may be, as principal, made through the agency of the War Shipping Administration or the Company designated herein which acts as agent only and shall be under no personal liability whatsoever in respect thereof. If, however, it shall be adjudged that any other than the owner or demise charterer is carrier and/or bailee of the goods all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other."

■ The War Shipping Administration held its berth agent out to the public as a common carrier. That agent's authority is written and indisputable. It employed United Fruit Company as its agent to receive the merchandise that it offered to transport and to issue bills of lading therefor. It designated the vessel to carry what it received, employed by its agent the stevedores who put it aboard and fixed and received the freight. It determined the vessel on which the cargo should go as against the owners of it or of the ship. Exhibit F, Article 3 A (a); Bill of Lading, clause 2. It was the carrier of libellant's merchandise and a common carrier thereof.

The Farida was manned, equipped, supplied and operated by the owner's trustee. She completed her voyage arriving at Havana on October 11, 1944 and returned to the United States where she was redelivered to the trustee on December 16, 1944 at Philadelphia, Pennsylvania.

■ Respondent J. H. Winchester & Company was the agent of War Shipping Administration and as such operating agent had contracted to conduct the business of the Farida. Respondent United Fruit Company was the berth agent of the Farida for the trip on which she carried libellant's merchandise and as such berth agent had contracted to conduct the business of the ship. The berth agent's duties specified in its contract appeared to be identical with the duties of the Winchester Company under its contract but both were submitted to the Court as subsisting agreements. Respondent United Fruit Company issued the bill of lading to the libellant as agent for the ship's master. The ship's master, in turn, in issuing the bill of lading by his agent and in the carriage of libellant's merchandise, was agent for the War Shipping Administration, the time charterer and carrier. Exhibit C, clause 14; Gans S. S. Lines v. Wilhelmsen, 2 Cir., 275 F. 254, at page 262; Benner Line v. Pendleton, 2 Cir., 217 F. 497; Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770.

■ Clause 1 (a) of the Bill of Lading is invalid in so far as its second sentence is presented as a defense by respondent United States of America. In such aspect it is an effort to relieve the carrier of liability for its fault; i. e., failure to deliver. 46 U.S.C. A. § 1303 (2) and 1303 (8); 46 U.S.C.A. § 190.

■ The S. S. Farida, when it received and carried libellant's merchandise, was a ship operated for the United States. 46 U. S.C.A. § 741; Byonnes & Son Dampskibsrederi Aktieselskab v. U. S., D.C., 298 F. 123; Berkholder v. U. S., D.C., 60 F.Supp. 700.

Judgment is awarded libellant against respondent United States of America for his damage in the sum of $321.23 with costs.

The finding that the War Shipping Administration was a common carrier is based on the bill of lading, the berth agency contract and what amounted to an admission or admissions of that fact or the elements that constitute it in the arguments in court.

■ The libellant has sued for a violation of his contract expressed in the bill of lading. The United States attempted to bring itself within what it regarded as an exceptive clause of that contract; i. e., so much of clause 1 (a) as states that the bill of lading shall enure as an agreement between the respondent and the owner of the vessel. This claim of the War Shipping Administration is disingenuous. The time charter, Exhibit "C" grants no authority whatever to contract on behalf of the owner. Even if the authority of the master to issue bills of lading be considered, that authority is for ordinary bills of lading and not to contract upon the owner liabilities properly devolving upon others. The fact that the Government contracted with one who assumed to act as agent or trustee of the owners evinces the absence of any oral or other or further authority to supplement the authority of the time charter. We can take judicial notice that in 1942 or since, the Estonian citizens who owned the vessel were not visiting the United States. As a matter of fact the vessel was returned to the trustee. Nor can we accept any theory giving a trustee or one who assumes to act as a trustee any agency or authority implied or apparent to contract for his beneficiary. The second sentence of clause 1 (a) therefore of the bill of lading conveys a false warranty of authority to contract. Nevertheless he is bound by his acceptance of it. The Toronto, 2 Cir., 174 F. 632. But clause 1 is invalid as a matter of law under the Carriage of Goods by Sea Act. In providing for the subjection of the parties to the terms of that Act, Bill of Lading, Clause 1, 46 U.S.C.A. § 1300, the War Shipping Administration embraced whatever disadvantageous conditions attached to it as well as the advantageous ones. The clause which we have held invalid; i. e., the second sentence of clause 1 (a), we regard as a clear violation of 46 U.S.C.A. § 1303(8). See also 46 U.S.C.A. § 190. While the place of delivery is Havana, no Cuban law was proved and could not be urged or enforced if it exists since it would contravene the Act. 46 U.S.C.A. § 1300.

■ Both respondents Winchester & Co. and United Fruit Company are agents of the War Shipping Administration. The action is for breach of contract and no liability for such breach attaches to either since there is no evidence of any agreement by either to assume any personal duty to the libellant. Mallory S. S. Co. v. Garfield, 2 Cir., 10 F.2d 664.