Thomas STUBBLEFIELD, Plaintiff,

v.

VICKERS TOWING COMPANY, Tower
Rock Stone Co., and United States of
America, Defendants.

No. GC86–352–S–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

Dec. 2, 1987.

Lawrence D. Wade, Campbell, Delong, Hagwood, Wade & Stuart, Greenville, Miss., David E. Crawley, Jr., Crawley and Ford, Kosciusko, Miss., for plaintiff.

Randolph Noble, Jr., Robertshaw, Terney, Noble & Smith, Greenville, Miss., for defendant Vickers Towing Co.

Frank S. Thackston, Jr., Lake, Tindall, Hunger & Thackston, Greenville, Miss., for defendant Tower Rock Stone Co.

John Jay Wells, Torts Branch—Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant U.S.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on defendant Vickers Towing Company's motion for summary judgment. For the reasons stated below, the court sustains the motion as well taken.

## FACTS

On September 1, 1985, plaintiff Thomas J. Stubblefield was a seaman employed by Vickers Towing Company as a member of

the crew of the M/V TERRI. Stubblefield now alleges that he was injured on that date while aboard a barge owned by Tower Rock Stone Company. He brings this action based on claims under the Jones Act and general maritime law. Tower Rock Stone Company asserts a cross-claim for indemnity for breach of warranty of workmanlike performance and failure to exercise reasonable care in discovering defects or unsafe conditions.

The M/V TERRI was one of two vessels which Vickers Towing had under charter with the Department of the Army, Memphis District Corps of Engineers and assigned to Bank Protection Party # 11. The M/V TERRI was under contract "for general towing and tender service in connection with construction and maintenance of channel improvement works." The contract provides that the tenders were to be available "24 hours per day, 7 days per week." The contract states that:

The tender(s) shall be under the control of the Contracting Officer, or his representative, with regard to location and hours of work. However, the rental is to be considered as a time charter, as distinguished from a demise or bare boat charter, and the operation of the tender(s) shall at all times be under the direction of the Contractor or his employee or employees.

The affidavits of Contracting Officer's Representative and Chief of Bank Protection Party # 11, James F. Hopper, and Shift Foremen of Grader No. 4919 BPP # 11, Charles P. Addington and Billy W. Busby, state that their control over the M/V TERRI was limited to the issuance of sailing orders and notifying the crew when to pick up or deliver the grader. The affidavit of Thomas Stubblefield states that at the time of his injury, Captain Howard Harris, an employee of Vickers, was in exclusive control of the M/V TERRI. He states that no employee of the U.S. Government was directing the operation of the vessel or the management of its crew. The affidavit of J.E. Vickers states that the government directed all movements of the M/V TERRI during the term of the contract and that the M/V TERRI worked solely for the government during the effective period of the contract and performed work for no other entity during the term.

Based upon these facts, Vickers Towing Company, Inc., moves for summary judgment on the grounds that Stubblefield's exclusive remedy is against the United States under the Public Vessels Act, 46 U.S.C. §§ 781–90, and the Suits in Admiralty Act, 46 U.S.C. §§ 741–752.

### LAW

The Suits in Admiralty Act (SIAA) applies to "vessel(s) owned by the United States ... or in the possession of the United States ... or operated by or for the United States...." 46 U.S.C. § 741. The Public Vessel Act (PVA) applies to "damages caused by a public vessel of the United States." 46 U.S.C. § 781. "Although the two statutes overlap on their face, actions involving public vessels are not cognizable under the SIAA but must be brought solely under the PVA." *Blanco v. United States*, 775 F.2d 53, 57 (2d Cir.1985).

### M/V TERRI IS NOT A PUBLIC VESSEL

■ A "public vessel" is a vessel owned or under demise charter to the United States and used by the government exclusively for a public purpose. *Blanco*, 775 F.2d at 57–60. *See also Denahey v. Isbrandtsen Co., Inc.*, 80 F.Supp. 180 (S.D.N.Y.1948). The M/V TERRI was owned and operated by Vickers Towing and under a time charter to the Corps of Engineers. Clearly, the M/V TERRI was not a public vessel.

### M/V TERRI WAS "OPERATED BY OR FOR THE UNITED STATES"

The relevant question is whether a vessel operating under a time charter is considered as "operated by or for the United States" under the SIAA. This precise question has twice been considered by the Supreme Court of the United States. In *Calmar S.S. Corp. v. United States*, 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140 (1953), the Court considered the liability of the

United States for the destruction of the S.S. PORTMAR. Calmar Corporation entered a contract with the United States to carry military supplies from San Francisco to Manila. The contract required Calmar to provide a seaworthy vessel manned by "a master and a full complement of officers and crew for a vessel of her tonnage." The wages of master, officers, and crew were paid by Calmar and all drydocking, cleaning, and painting expenses were also to be paid by Calmar. The contract required that "the master [was to] load, stow, trim and discharge the cargo at its expense under the supervisor of the master who [was] to sign bills of lading for cargo as presented.... The master, officers, and crew of the vessel in supervising loading, stowing, trimming, tallying and discharging [were to] be deemed the agents of the charterer, except insofar as such supervision pertain[ed] to the safety of the vessel." Calmar was also required by the contract to investigate any complaints against the master, officers, and crew by the United States and to make any necessary changes in appointments. *Calmar,* 345 U.S. at 448–49, 73 S.Ct. at 734–35.

The Court first held that a privately owned and operated vessel could not come under the PVA even though carrying military cargo. The Court rejected the government's contention that the claim was properly cognizable under the Tucker Act. The Court stated: "The Suits in Admiralty Act and the Public Vessels Act are not to be regarded as discrete enactments treating related situations in isolation. Hence there is no reason why a claim arising in connection with a vessel bareboat chartered by the United States and carrying war material should be heard by a District Court, while a like claim relating to a vessel chartered as was the PORTMAR and carrying the same type of cargo should require an action to be filed in the Court of Claims.... We hold that the PORTMAR, a privately owned vessel operated for hire for the United States was 'employed as a merchant vessel' within the meaning of the Suits in Admiralty Act, although engaged on a war mission." *Calmar,* 345 U.S. at 455–56, 73 S.Ct. at 737–38.

The Court considered a similar issue in *Matson Navigation Co. v. United States,* 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932). The vessels in that case were requisitioned by the United States. The "requisition charter" covered many items normally covered by time charters. The charter provided that the vessel would remain in the service of the United States but that Matson would "operate the vessel, furnish crew and equipment, and pay for provisions, wages, shipping fees, and supplies." Matson was to be compensated by monthly ship hire plus reimbursement of certain expenses. *Matson,* 284 U.S. at 354, 52 S.Ct. at 164. The Court ruled that an action on this contract was cognizable under the Suits in Admiralty Act.

The issue in both of the cases discussed above dealt with whether the owner's suit for compensation was properly under the SIAA. These cases clearly demonstrate that an agreement not transferring ownership or possession to the United States can constitute operations "by or for the United States." *See also Burkholder v. United States,* 60 F.Supp. 700, 702 (E.D. Pa.1945) ("holding that a seaman's remedy for maintenance and cure against a privately owned ship time chartered to the United States is converted by the Suits in Admiralty Act into a libel in personnam against the Government"). The charter under consideration is similar to the charters considered in *Calmar, Matson,* and *Burkholder.* Each of these cases involved a vessel chartered by the United States but mastered, officered, and crewed by the owner of the vessel. The element of control necessary to create liability in the United States is not detailed supervision of the minutia of the vessel's operations but rather a shifting of financial risk by assigning the ability to exclusively control when the vessel will sail and what cargo she will carry. *See N.S. Byonnes & Son Dampskibsrederi Akties-elskab v. United States,* 298 F. 123 (S.D.N. Y.1923). In this cause, the ultimate and exclusive ability to control the M/V TERRI belonged to the United States under the charter. The United States is potentially liable under the SIAA both for Stubble-

field's injuries directly and for any indemnity claims which Tower Rock Stone may assert against Vickers Towing.[1]

## VICKERS TOWING AGREED TO INDEMNIFY UNITED STATES

■ Article 3 of the charter contract explicitly provides that "the Contractor assumes full responsibility for the safety of his employees, plant, and materials and for any damage or injury done by or to them from any source or cause, except damage caused to plant or equipment by acts of the Government...." The plain language of this clause obligates Vickers Towing for all injuries to its employees and for all injuries to plant and equipment not caused by acts of the Government. The United States implies that the existence of this "hold harmless" clause prevents dismissal of Vickers Towing and requires dismissal of the United States.

■ Vickers suggests that this clause is contrary to public policy, citing *Santos v. RCA Service Company*, 603 F.Supp. 943, 948 (E.D.La.1985). The court there found that a contractual agreement to indemnify is an attempt to modify the scheme intended by Congress under the PVA and SIAA and is not permissible under the supremacy clause of article VI of the United States Constitution. *Id.* This court must respectfully disagree with this conclusion. In *Smith v. United States*, 497 F.2d 500 (5th Cir.1974), the Fifth Circuit held valid a provision stating that "[t]he Contractor shall assume all liability and hold and save the Government ... harmless for any and all claims for personal injuries." The court required the contractor to indemnify the United States for damages awarded under the SIAA for personal injuries arising from the negligence of the United States. *Smith*, 497 F.2d at 507–09. *See Edward E. Gillen Co. v. United States*, 825 F.2d 1155

1. The court notes that the SIAA provides that actions thereunder "shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." 46 U.S.C. § 743. The court also notes that under both general maritime law and the Jones Act, a private time charterer will not be held liable for the shipowner's negligence or failure to provide a seaworthy vessel because operational control has not shifted to the time charterer from the owner. M.J. Norris, *The Law of Maritime Personal Injuries* 3rd, § 130 (1987). The courts have previously used a similar test in many cases involving liability under the SIAA but not considering time charters. *See Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949) (determining that general agent who has no duties in actual management or navigation of U.S. owned vessel not liable for crew injured through crew negligence under SIAA and Jones Act); *Weade v. Dichmann, Wright & Pugh, Inc.*, 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704 (1949) (same—injured passenger); *Fink v. Shepard S.S. Co.*, 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709 (1949) (same, wages, maintenance and cure); *Trautman v. Buck Steber, Inc.*, 693 F.2d 440 (5th Cir.1982) (U.S. not liable for injury to diver from negligence of subcontractor where U.S. exercised no operational control over subcontractor). The conclusion that a United States agency as a time charterer cannot be liable would seem to be compelled by these arguments.

However, as noted in the body of this opinion, the Supreme Court has concluded in contexts other than personal injury that the United States is liable under the SIAA when the vessel is merely time chartered. *See Calmar S.S. Corp. v. United States*, 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140 (1953); *Matson Navigation Co. v. United States*, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932). This position also appears well grounded in the language of the SIAA itself. 46 U.S.C. § 741 exempts from seizure any "vessel owned by the United States ... in the possession of the United States ... or operated by or for the United States." The first phrase clearly applies to vessels actually owned by the United States. The second phrase covers vessels within the legal possession of the United States, such as bareboat charters and requisitioned vessels. If the third phrase is not to be a nullity, it must apply to situations where the vessel is used exclusively for the purposes of the United States but the United States neither owns or possesses the vessel. This can only mean time and voyage charters.

This is the only reasonable reading in light of the history of the act. The purpose of the act was to permit suit against the United States for actions of vessels in its service while freeing such vessels from threat of arrest under an action *in rem*. The purpose would not be served by limiting the application of the act to vessels owned or possessed by the United States. The government had equal interest in preventing the seizure of vessels operated exclusively for it. Ironically, were the M/V TERRI the only vessel available for its purpose and had the vessel been seized in an action *in rem*, the United States conceivably would be before this court arguing *for* the application of the SIAA to time charters.

(7th Cir.1987) (upholding indemnity clause under both SIAA and PVA where clear and unambiguous); *Shenker v. United States,* 322 F.2d 622 (2d Cir.1963) (allowing indemnification under PVA). The indemnity clause is valid absent specific statute or judicial holding that a given indemnity clause is void as against public policy.

■ One cause of action arises under the Jones Act, 46 U.S.C. § 688. The Jones Act incorporates by reference the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.* 45 U.S.C. § 55 forbids "any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter...." This would appear to avoid the indemnity clause to the extent of liability under the Jones Act even though the suit is actually brought under the SIAA. *Forgione v. United States,* 202 F.2d 249 (2d Cir.1953), *cert. denied,* 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953); *Mercado v. United States,* 184 F.2d 24 (2d Cir.1950); *Sevin v. Inland Waterways Corporation,* 88 F.2d 988 (5th Cir.1937).[2] Consequently, the United States cannot be dismissed as a defendant.

■ Nor does the existence of a claim for indemnification under general maritime law by the United States against Vickers Towing warrant a retention of Vickers Towing as a defendant. As noted above, all claims asserted against Vickers Towing by Stubblefield and Tower Rock Stone were properly asserted against the United States under the SIAA. Article 3 of the charter party requires that the Contractor "assumes full responsibility" for any personal injuries whether or not that injury was the fault of the government. Article 2 requires that the Contractor "will defend the [Government] free of charge" in any suit resulting from the use of the chartered vessel. This clearly requires that Vickers Towing indemnify the United States but does not suggest that the United States shall be relieved of liability under the SIAA. Consequently, Vickers Towing will be liable to the United States[3] but is not liable directly to Stubblefield or Tower Rock Stone. Vickers Towing should be dismissed as a defendant.

## CONCLUSION

■ Under the terms of the charter party, the M/V TERRI was "operated by or for the United States" with the consequence that Vickers Towing was the agent of the United States. Any remedy for a tort committed by the crew or owner of the M/V TERRI within the scope of the charter is exclusively against the United States. The charter party requires that Vicker Towing indemnify the United States as to all liability arising from personal injury to the employees of Vickers Towing. This provision is valid as to claims arising under general maritime law—e.g., unseaworthiness claims—but not as to negligence claims under the Jones Act. Vickers Towing will be liable to the United States for any damages awarded under the general maritime law but is not a proper party to this action in its current posture because no valid claims are asserted directly against Vickers Towing. Vickers Towing must be dismissed as a defendant.

An order in conformity with this opinion shall issue.

---

**2.** *Sevin* states that the seaman's rights under the Jones Act and SIAA are limited to those available in admiralty. *Sevin,* 88 F.2d at 989. This implies that the right to jury trial afforded to seamen by the Jones Act is not available when the action is brought through the SIAA.

**3.** The United States may assert this claim in a separate action for indemnification or, alternatively, in a cross-claim within the cause *sub judice.*